No. 31,363.

THE STATE OF KANSAS, ex rel. ROLAND BOYNTON, Attorney-general, *Plaintiff*, v. THE BOARD OF EDUCATION OF THE CITY OF TOPEKA, *Defendant*.

(21 P. 2d 295.)

Opinion filed April 29, 1933.

*Roland Boynton*, attorney-general, and *W. C. Ralston*, assistant attorney-general, for the plaintiff.

*Bennett R. Wheeler*, *S. M. Brewster*, *J. L. Hunt*, *Margaret McGurnaghan* and *Ralph M. Hope*, all of Topeka, for the defendant.

*Harry W. Fisher*, of Fort Scott, and *C. O. Pingry*, of Pittsburg, as *amici curiæ*.

The opinion of the court was delivered by

HARVEY, J.: This is an original proceeding in mandamus to compel defendant to take the necessary steps to comply with a recent act of the legislature, House bill No. 745, which went into

effect March 31, 1933, and is printed in the footnotes. Defendant has demurred and thereby raised questions as to the validity of the act; also, some questions are presented about its construction.

The act pertains to the indebtedness of subdivisions of the state authorized by law to raise money by taxation and to expend the money so raised in performing their respective governmental functions. Broadly speaking, it is designed to have such governmental units operate their respective functions on a cash basis—not to spend money they do not have or incur obligations they cannot meet promptly. Some of them, for one reason or another, had not been doing that, but had conducted their business somewhat on a credit basis. In some, proper books had not been kept, or sufficient publicity given, so that its citizens could know its financial status. It was thought waste, extravagance and an undue burden on taxpayers resulted from such methods of doing business, and the legislature deemed it prudent to change such practices and put all such governmental units on a cash basis. To do this it was necessary to have a starting point. So a date was named—the close of business April 30, 1933—when each of the governmental units was required to take stock, as it were, of its financial status; determine its then valid existing indebtedness (not counting bonds issued, indebtedness of municipally owned utilities, and unliquidated claims in tort) ; also, to determine moneys on hand or accruing, and estimate taxes which should be received by July 1, 1933. If it finds it does not have sufficient money available to pay its valid existing indebtedness it is authorized to issue bonds in an amount sufficient to pay such indebtedness. All of this is the exercise of valid legislative functions. It remains to be determined whether the statute is invalid for any of the reasons soon to be mentioned. Defendant contends it is invalid for the reasons:

First. That the provisions (sections 4 and 5) for the summary hearing on the allowance of claims by the district court, without a jury, violates our constitution (bill of rights, § 5)—"The right of trial by jury shall be inviolate." There may be several answers to this, but one good one is enough. All controversies over allowing, or refusing to allow, claims against a governmental unit "shall be docketed in one composite cause" in the district court. The real matter to be determined by the court is the amount of the valid existing indebtedness of the governmental unit on the date of April

30, 1933, in so far as any controversy respecting such indebtedness has arisen. The proceeding is equitable in its nature, much like a hearing in an insolvency proceeding. In fact, the act is predicated upon the view that some of our governmental units owe more than they can pay from their income under existing statutes, and are in a situation comparable to insolvency. Hence, a procedure of that nature was provided for the determination of their financial status, when a controversy arose concerning it. More than that, it is suggested this manner of establishing a claim is not made exclusive by the act. But we need not determine that question now. It is sufficient to hold, as we do, that the act of the legislature in question is not invalid, on the ground that it provides for the hearing of controversies over questioned claims against a governmental unit in a composite cause by the district court without a jury.

Second. That the provision (sec. 10) by which the governmental unit may pay an indebtedness by giving the one to whom it is indebted a bond for the amount of the debt is bad, on the ground that it violated contract obligations. Creditors of such governmental units are bound to know the statutory provision relating to their incomes, and when they exhaust their incomes and incur additional indebtedness, the legislature may in some way provide for their relief, and a common way to provide such relief is by a bond issue. Since no one is before us who had refused to take bonds in payment of an indebtedness to him, his right to so refuse cannot be determined. As a purely academic question, and as to some debts by reason of the circumstances under which they accrued or are evidenced, perhaps the statute may be said to violate his contract rights, unless the creditor consented thereto. We apprehend, however, that most of the debts to be paid by bonds, or the proceeds of bonds, are current obligations which have accrued recently, and that the question concerning them would not arise. No doubt the legislature contemplated that both the officers of the governmental unit and its creditors would coöperate in a spirit of good faith to carry out the beneficial purposes of the act. If a creditor—and perhaps there may be some—were in position to do so and were to insist on his strict legal rights, perhaps he would be entitled to payment instead of bonds, and could not be required to take bonds unless he consented thereto. The presumption is the legislature intended to pass a valid act, and if there is a reasonable way to construe it so that it is valid instead of invalid, that construction will be given

it by the court. By construing the statute that the consent of the creditor to take bonds is necessary in the instances where he could, under the law, decline to take them, there is no invalidity in the statute. More than that, the entire section is optional and is only a substitute for other provisions for the issuing and sale of bonds and the payment of debts from the proceeds thereof.

Third. That the act (sec. 11) authorizes a wrongful diversion of money raised by taxation, in violation of our constitution (art. 11, § 4), which provides that a tax shall be applied to the object for which it was levied. This section provides that money derived from taxes payable prior to July 1, 1933, distributable to the funds against which indebtedness has been refunded, may be applied to the retirement of such bonds, or set up in the fund for which it was levied and used for current expenses thereof. It is argued that the taxes so received might not have been levied for the fund for which bonds were issued and if applied to retire bonds would be a wrongful diversion. That would be a strained construction of the statute, and obviously one not contemplated by the legislature. As we construe it the section simply means that if taxes, say from the general fund, were received from April 30 to July 1, they might be set up in that fund and used for current expenses, or if bonds had been issued for debts owing from the general fund, the money so received, or a part of it, could be applied on retiring such bonds. If no bonds had been issued because of debts in the general fund the money could not be applied to retire such bonds.

Fourth. R. S. 72-1705 provides a limit on the amount of bonds issued under the authority of the vote of the people in certain governmental units to three per cent of the value of the taxable property. It is argued this act may authorize bonds to be issued in such an amount that, together with bonds now outstanding, the total will exceed three per cent of the taxable property in the governmental unit, and this will affect the value of bonds already issued. The point lacks substantial merit, for the reason that a limitation on the amount of bonds a governmental unit may issue is a statutory limitation, not a constitutional one. The legislature may change it. The holders of bonds previously issued are bound to know that. Again, it is purely speculative that it would have the effect contended. Again, this act specifically provides (sec. 8): "None of the debt or bond limitations provided by law shall apply to bonds issued under this act."

Fifth. Statute of limitations. It is argued the act has unreasonably reduced the statute of limitations for establishing claims. It provides they should be presented by May 15. This is about forty-five days after the statute became effective, March 31. This question is quite academic, particularly in view of the fact that no one is here complaining that he did not have time to present his claim. As previously noted, most of these claims will be for current expenses, which normally could be presented promptly. It is conceded that the legislature may change the statute of limitations without destroying property rights, if the period provided is not unreasonably short. It is suggested that certain counties have a county auditor, and the statutes relating to them provide that claims against the county shall be audited. We do not determine the question whether an audit is essential under this act, but if it is, that would not prevent a creditor from filing. his claim. Nothing is presented to us now that would justify us in holding the act to be invalid for this reason. If in the future some creditor should contend that his property rights had been infringed by the shortness of time for presenting his claim, the validity of this provision, as it affects him, may be determined.

Sixth. That the title to the act violates our constitution (art. 2, § 16) in that it contains two or more subjects. We think it is not open to that objection. All provisions of the act relate to indebtedness of governmental units.

Seventh. That there is a wrongful delegation of legislative authority to the state tax commission (sec. 16) by reason of which the act does not have uniform operation throughout the state. The fact that the state tax commission is given some administrative duties with respect to the act does not prevent it from having uniform operation throughout the state. It is argued the state tax commission is without a guide for its action, hence that it may act capriciously or arbitrarily; that it might use one basis for action in one case and another in another. But this cannot reasonably be said. The act provides that any municipality which "shall become unable to go upon or continue to operate" under the act may make application to the state tax commission, "setting forth all the facts," and the state tax commission shall promptly hear the matter and grant or deny temporary exemption from compliance with the act, but shall make "findings of fact in detail showing all the conditions, facts and circumstances" upon which the application is based and upon

which its ruling is founded. The guide set forth in the statute is the inability of the municipality to function under the act. Because of varied facts which might create such an inability the legislature wisely did not undertake to enumerate them, but required them to be set out and specifically found. We see nothing seriously wrong with this provision. As tending to support this view, see *Barber County v. Bank Commissioner*, 113 Kan. 180, 213 Pac. 1054.

Eighth. Date of the bond. The act does not specifically provide the date of the issue of the bonds. They are made, of course, to take up indebtedness accrued April 30, but under the act they might be issued of the date of July 1. The act is not invalid by reason of not fixing the specific date. Whether they are predated or post-dated does not seriously affect their validity, the only point being that they should be handled so that there is not a duplication of interest computation.

Ninth. Current expenses to July 1. A query is presented as to contracts of employment for a term extending after April 30, whether the amount of the bonds should include compensation for services after that date. The act seems to make it clear that the computation should be only "for services rendered and material furnished prior to the close of business on the last day of April, 1933." The act as a whole contemplates something in the nature of striking of a balance as of that date, and either the paying of indebtedness then due and payable or funding the same. The same thing would apply to expenses of complying with the act, such as issuing bonds and the like. If services had been performed and material furnished and claims therefor were due and payable on April 30, they should be taken into account, otherwise not.

A number of other questions are propounded to us which may or may not arise in the carrying out of the statute. Interested parties may consult their attorneys about those. If an actual controversy arises between parties directly affected by any of such questions, they will find a way to present it for decision.

The act is not void for any reason suggested. The writ prayed for will issue, on præcipe therefor.

PROVIDING FOR THE FUNDING OF INDEBTEDNESS OF CITIES, COUNTIES, TOWNSHIPS, SCHOOL DISTRICTS AND DRAINAGE DISTRICTS.

(House Bill No. 745.)

AN ACT in reference to indebtedness of cities, counties, townships, boards of education, municipal universities, school districts, high-school districts, drainage districts, and other municipalities, and providing for the funding of the same, and prohibiting the drawing of warrants or making of contracts under certain circumstances, and providing penalties for the violation of this act.

*Be it enacted by the Legislature of the State of Kansas:*

SECTION 1. The following words, terms and phrases, when used in this act, shall, for the purpose of this act, have the meanings respectively ascribed to them in this section, except in those instances where the context clearly indicates a different meaning: (*a*) "Municipality" shall be construed and held to mean county, township, city, board of education, municipal university, school district, high-school district, drainage district, and any other similar political subdivision or taxing district of the state. (*b*) The words "governing body" shall be construed and held to mean board of county commissioners of any county, township board of any township, mayor and councilmen or board of commissioners of any city, board of education of any city, school board of any school district, board of trustees of any high school, board of regents of any municipal university, board of directors of any drainage district, board of park commissioners of any city, and any other governing body or board of a municipality having authority under the laws of this state to create indebtedness against the municipality. (*c*) The word "person" shall be construed and held to mean persons, partnerships, associations and corporations. (*d*) The word "claim" shall be construed and held to mean any claim arising on contract express or implied, or a claim determined by final judgment, but shall not include claims arising from alleged tort or negligence on the part of the municipality.

SEC. 2. All municipalities are required to pay or refinance their valid indebtedness as in this act provided, in the manner and at the times herein set forth, and to contract no indebtedness after May 1, 1933, except as herein provided. It is hereby declared that the purpose of this act is to provide for the funding and payment of all legal debts and obligations except present bonded indebtedness of all municipalities and for the future conduct of the financial affairs of such municipality upon a cash basis.

SEC. 3. On or before the first day of May, 1933, the governing body of any municipality having outstanding indebtedness other than bonded indebtedness, shall make and compile or cause to be made and compiled a full, complete and detailed financial statement containing at least the following information as to the financial condition of the municipality as of April 30,, 1933:

(A) Amount of registered warrants and accrued interest thereon classified by funds and years of issue.

(B) Amount of overdrawn funds other than bond funds for which a tax levy was made for the current tax year, showing each fund and the amount of its overdraft separately.

(C) Amount of overdrawn bond funds, and funds which should later be transferred to bond funds listed in such a manner that the net overdraft of all such funds is shown.

(D) Amount of all overdrawn funds for which no tax levy was made for the current year, showing each fund and the amount of its overdraft separately.

(E) Amounts collected by tax levy for sinking funds but which were expended for purposes other than that for which the tax was levied.

(F) Amounts of all valid claims against the municipality for services rendered or material furnished prior to the close of business on the last day of April, 1933, for which no warrant, check, or other form of payment of indebtedness has been issued, showing each separately, giving date, name of creditor, nature of claim and amount.

(G) Amounts of all other indebtedness of such municipality not secured by bonds and not enumerated above which were valid obligations of the municipality at the close of business on the last day of April, 1933, giving date, the name of the creditor, a short statement of what the indebtedness is for and the amount of each such indebtedness.

In addition to the foregoing statement of debits, a statement of all moneys on hand, where and how kept and of all moneys accruing or which shall accrue to the municipality from any source whatsoever (except taxation) before July 1, 1933, and an estimate showing the amount of taxes uncollected, delinquent and in process of collection which should be paid before July 1, 1933. The clerk and treasurer respectively of each municipality and any other officer of such municipality of whom the governing body shall request any information shall promptly and accurately supply the same to the governing body, all excuses and delays set aside, over their signature and oath, so that such statement may be prepared, posted and published on the first day of May, 1933, as herein provided.

SEC. 4. The governing body of any municipality having any of the items of outstanding indebtedness mentioned in section 3 hereof shall, on or before May 5, 1933, post a notice in as many and at the same places within its territory as were used for voting places at the last general election, and at the office of its treasurer and clerk and at each schoolhouse and make publication of a similar notice in a newspaper inside the county, qualified to print legal publications, for three consecutive weeks, the first publication being in the first issue for legal publications of said paper subsequent to May 1, 1933. Such notice so posted and published shall contain not only the complete financial statement herein required, with full and complete totals and additions of the several items, but shall state that on or before the third Monday in June, 1933, a resolution will be duly passed and proceedings instituted for the issuance and sale of refunding bonds of such municipality to the amount necessary to retire and discharge such indebtedness existing on April 30, 1933, with interest to July 1, 1933, where interest is payable, said bonds to be issued and sold in the same manner as now provided by law for the issue and sale of municipal bonds. Said notice shall likewise contain the statement that any person claiming to be a creditor of such municipality whose claim or demand is not shown upon such posted or published statement must present to the governing body a duly verified voucher covering the said claim or demand on or before May 15, 1933, and such governing body shall upon said date assemble for the purpose of passing upon all claims so presented and shall either allow or disallow the same. If allowed, such claims shall thereupon be added to the list of indebtedness to be liquidated and refunded; if dis-

allowed the claimant shall have the right to appeal to the district court of the county by filing with the clerk of the governing body a notice of appeal within five days from the date of such disallowance and thereupon said claim and all papers, records, and other matters pertaining thereto shall forthwith be certified by the clerk of the governing body to the clerk of the district court of the county where the same shall be docketed in one composite cause for all appeals from said municipality and the district court without a jury, shall thereafter and between the 1st and 15th days of June, 1933, summarily hear and determine all such appeals and render judgment thereon which judgment shall be by the clerk of the district court duly certified back to the clerk of such municipality and the financial statement so posted and published corrected and amended accordingly. All claims not presented as above provided (except unliquidated claims for damages) shall be barred and shall no longer constitute a valid and existing indebtedness of the municipality.

SEC. 5. No claims shall be listed upon or included in said statement or posted or published notice nor added thereto as amendments nor included in the final completed statement for payment and liquidation except valid legal claims against the municipality for which it is legally liable. If any claims shall be included in said statement or shall be allowed by the governing body which are not valid and legal claims and which are objected to by any person, such objections shall likewise be presented to the governing body at the meeting which is hereby required to be held and on that date such objections shall be presented and decided by the governing body; and from such decision any ten (10) taxpayers may appeal to the district court in the same manner as appeals are provided in the case of claims and demands and shall be by the district clerk docketed in the same composite cause as claims and demands are docketed against any municipality, and shall be presented to and heard by the district court without a jury and decided and the judgment certified back to the clerk of the municipality as in the case of claims and demands.

SEC. 6. All matters appealed to the district court must be decided by June 15, 1933, and the decision certified to the governing body on or before the 17th day of June, 1933, and on the 19th day of June, 1933, said governing body shall meet and shall amend and rectify such financial statement in accordance with any judgment or judgments of the district court and shall make and post, as in the case of the first statement, amended copies thereof and cause the same to be printed in one issue of the same newspaper in which the original published notice was printed. An appeal may be taken from the decision of the district court in the same manner as appeals in civil cases, and in the event any appeal is taken the claim or claims involved in such appeal shall not be included in the amount of indebtedness for which bonds are to be issued, but no injunction or other proceedings shall be had to stay the issuance of such bonds pending the determination of said appeal; and if, upon final determination of said appeal, the claim or claims against the municipality shall be allowed, such municipality shall, and it is hereby authorized, to issue additional bonds under the provisions of this act to fund the claim or claims so allowed.

Sec. 7. Any municipality which has complied with all the provisions of this act is hereby authorized to fund such indebtedness (viz., the indebtedness as shown on the final published statement of the municipality), including the accrued interest thereon, if any, to July 1, 1933, and to issue bonds of the municipality for the purpose of paying or refinancing said indebtedness.

Sec. 8. All bonds issued under the provisions of this act shall bear interest at the rate of not more than five per centum per annum, and shall be issued in denominations of fifty dollars ($50) or more and shall run for not less than two nor more than fifteen years, and shall mature serially in annual installments of approximately equal amounts. Such bonds shall be issued and sold in the same manner as provided by law for other municipal bonds (except that it shall not be necessary to offer said bonds for sale to the state school-fund commissioners); or the governing body of the municipality may use said bonds without sale, in payment of any of the indebtedness for which the same were issued or hereinafter provided. None of the debt or bond limitations provided by law shall apply to bonds issued under this act.

Sec. 9. Immediately upon the sale of such bonds and the receipt by the treasurer of the municipality of the proceeds thereof, the governing body shall proceed forthwith to pay off and discharge all of the indebtedness of such municipality as shown upon its final published statement, to the end that such municipality may, after May 1, 1933, operate on a cash basis, without other indebtedness or liabilities, except that covered by bonds previously issued or issued under the provisions of this act and this act shall be liberally construed for the achievement of said objectives. The proceeds of the sale of such bonds shall be used for the sole purpose of paying off and discharging the indebtedness of the municipality as shown upon its final published statement, and any balance remaining in the hands of the treasurer of the municipality after paying off and discharging such indebtedness shall be applied to the payment or retirement of said bonds and interest.

Sec. 10. If the governing body of any municipality shall desire to use said bonds directly in payment of all or any part of the indebtedness to pay and retire which the same were issued, instead of selling the same and paying the said indebtedness in cash, it may proceed to do so in the following manner. A resolution shall be adopted by the governing body and spread at length upon its journal, which resolution shall show its determination to pay debts by bonds instead of cash, the name of the creditor or creditors to be so paid, with the amount of their respective claims; and any numbers or other identifications thereof; the amount in bonds to be issued to each of said creditors, together with the numbers, dates, maturities and denomination of the bonds to be delivered to each of said creditors. Said bonds for the purpose of paying debts shall bear interest at the rate of not more than five per centum per annum and shall be computed at their present worth at date of delivery, which shall be the par value thereof, plus accrued interest, and the same may be exchanged in payment and liquidation of indebtedness, dollar for dollar and not otherwise, unless by separate agreement the creditor shall be willing to take less in payment of his claim and debt than the face value thereof. Any bonds used or disposed of in payment of debts shall be noted

upon the bond register of the municipality, of the county clerk, and a minute thereof sent to the state auditor for notation on his register, showing the serial numbers of said bonds, the name of the creditor to whom delivered, and the amount of his claim thus paid. Where bonds are thus delivered to any creditor in discharge of debt, which is evidenced by any writing such as warrants, accounts or contracts of the municipality, all such warrants, contracts or writings shall be surrendered to the governing body simultaneously with the delivery of such bonds in payment thereof, duly marked canceled and paid, and such cancellation and payment shall be noted upon all other records of the municipality concerning the same. If such bonds are delivered in payment of indebtedness not evidenced by any writing except the voucher and/or claim of the creditor, such voucher and claim shall be marked paid in full by the creditor and proper notations thereof made on all records of the municipality concerning the same.

SEC. 11. The governing body of any municipality which issues any bonds under the provisions of this act is hereby authorized to make the necessary tax levies on all the property in such municipality which is taxable under the laws of this state, to pay such bonds and the interest thereon: *Provided,* That any money derived from taxes payable prior to July 1, 1933, distributable to the funds against which indebtedness has been refunded, may be applied to the payment or retirement of said bonds and interest or may be set up in the same fund for which it was originally levied and used for the current expenses thereof. Such funds so set up shall become and constitute operating funds to which shall be added all income for said funds after July 1, 1933, and from which all legal charges against said respective funds shall thereafter be made; and such funds shall not be construed as constituting "surplus funds" in determining the amount to be levied in any succeeding year.

SEC. 12. Unless otherwise provided in this act, it shall be unlawful after May 1, 1933, for the governing body of any municipality to create any indebtedness in excess of the amount of funds actually on hand in the treasury of such municipality at the time for such purpose, or to authorize the issuance of any order, warrant, or check, or other evidence of such indebtedness of such municipality in excess of the funds actually on hand in the treasury of such municipality at the time for such purpose.

SEC. 13. Unless otherwise provided in this act, it shall be unlawful after May 1, 1933, for any member of any governing body of any municipality to knowingly vote for or in any manner aid or promote the passage or adoption of any order, motion, ordinance, resolution, legislation or other act of said governing body, creating an indebtedness in excess of the amount of funds actually on hand in the treasury of such municipality at the time for such purpose, or to knowingly vote for the drawing of any order, warrant or check, or other evidence of such indebtedness on the treasury of said municipality, in payment of any such indebtedness, in excess of the amount of funds actually on hand in the treasury at the time for such purpose.

SEC. 14. Unless otherwise provided in this act, it shall be unlawful after May 1, 1933, for the clerk or secretary of any governing body of any municipality to knowingly issue, attest, sign or countersign any order, warrant,

check or other evidence of indebtedness, on the treasury of the municipality, in payment of any indebtedness of such municipality created by the governing body of such municipality in excess of the amount of funds actually on hand in the treasury of such municipality at the time for such purpose.

SEC. 15. Unless otherwise provided in this act, it shall be unlawful after May 1, 1933, for the treasurer of any municipality to knowingly pay any order, warrant, check or other evidence of indebtedness out of the treasury of such municipality in excess of the amount of funds actually on hand in the treasury at the time for such purpose.

SEC. 16. The provisions of this act shall not apply to contracts and indebtedness created, the payment for which has been authorized by a vote of the electors of the municipality, or where provision has been made for payment by the issuance of bonds as provided by law. The provisions of this act shall not apply to expenditures made for municipal-owned and operated utilities. The provisions of this act shall not apply to expenditures made in cases of extraordinary emergencies such as relief to the poor, the relief of destitution occasioned by famines, floods, fires, pestilence and *vis major,* in which case temporary emergency expenditures in excess of current revenue may be made in accordance with provisions of sections 79-1940 and 79-1941 of the Revised Statutes of Kansas of 1923. The board of education of any city, the board of regents of any municipal university, the school board of any school district, and the board of trustees of any high school may enter into contracts for teachers and other necessary employees, and continuing operating expenses in excess of the amount of funds actually on hand for that purpose: *Provided,* The total amount payable under all such contracts in force shall never exceed the amount actually expended for school purposes for the last preceding fiscal year during which school was conducted. It shall be unlawful for any member of any board of education of any city, school board of any school district, or board of trustees of any high school to knowingly vote for or in any manner aid or promote the entering into of any contract in violation of the provisions of this section: *Provided further,* That any municipality which, prior to January 1, 1934, shall become unable to go upon or continue to operate upon a cash basis as herein provided because of its inability to obtain operating funds, may make written application to the state tax commission setting forth all the facts and may be granted a special dispensation by the state tax commission temporarily exempting it from compliance with the provisions of sections 12 to 20, both inclusive of this act, and permitting such municipality to issue its warrants under the provisions of existing statutes under such limitations and restrictions as the tax commission shall impose. Such application when made shall be signed by each member of the governing body of said municipality, shall be verified by one of them, and when filed, the tax commission shall set a date for a hearing thereon and cause notice of such hearing to be given by publication in a newspaper qualified to print legal publication for such municipality, which notice shall also be posted in at least five conspicuous places in such municipality, and on the date set for such hearing all parties interested for or against the application shall be heard by the commission. The commission shall promptly pass upon said application and either deny or grant the same in

whole or in part and shall make findings of facts in detail showing all of the conditions, facts and circumstances upon which such application is based, and upon which its ruling is founded and such findings shall be made a matter of record in the office of the tax commission and copied at full length in the journal of the municipality. No exemption hereunder shall extend beyond January 1, 1935, and all indebtedness created under this exception shall be paid from the first collection and distribution of taxes after said date and all indebtedness thus created shall be included in the next legal levy.

SEC. 17. It shall be the duty of the clerk or secretary of every governing body of every municipality to keep a record of the amount of money in the treasury and the particular fund in which such money is deposited and to keep a record of all contracts creating a liability against the municipality, and a record of all indebtedness created by the governing body, in which record there shall be shown the date of the making of the contract or the creation of the debt, the amount of the contract or debt, the time payable, and the particular fund from which said payment is to be made, and the said clerk or secretary shall, upon the request of any member of the governing body of which he is clerk or secretary, or at the request of any taxpayer of such municipality or of any person desiring to enter into any contract with the municipality or who has any claim against the municipality, exhibit such records to such person, and any member of the governing body, and any person contracting with the said municipality shall be chargeable with knowledge of what said records contain.

SEC. 18. It shall be the duty of the treasurer of every municipality to keep a record of the amount of money on hand in the treasury, which record shall show at all times the amount of money in each particular fund, and each order, warrant, check or other evidence of indebtedness, drawn on the treasury and paid, giving the date of payment, and said treasurer shall, upon the request of any member of the governing body of such municipality or at the request of any taxpayer of such municipality or at the request of any person desiring to contract with such municipality or who has a claim against such municipality, exhibit such record to such person or give such person a statement in writing, showing the balances on hand in each of the funds of said municipality, and each member of the governing body and every person contracting with said municipality shall be chargeable with knowledge of what said records contain.

SEC. 19. Any contract entered into between the governing body of any municipality and any person, which violates the provisions of this act, shall be void, and any order, warrant, check or other evidence of indebtedness drawn on the treasurer of any municipality in violation of the provisions of this act shall be void.

SEC. 19a. The levying of a tax by any municipality which raises more money than is used or needed for the tax year shall not be the basis of a protest by any taxpayer and all such protests shall be of no force or effect.

SEC. 20. Any member of any governing body of any municipality or any clerk or secretary or treasurer of any governing body of any such municipality who shall knowingly violate any of the provisions of this act shall be guilty of malfeasance in office and shall by such violation, be subject to be removed

from office and in addition any member of such governing body or clerk or secretary or treasurer of such municipality who shall violate any of the provisions of this act, or neglect or refuse to perform any duty herein imposed, shall be deemed guilty of a misdemeanor, and upon conviction thereof in a court of competent jurisdiction shall be subject to a fine of not less than $10 nor more than $1,000.

SEC. 21. Should the courts declare any section, clause or provision of this act unconstitutional, the decision shall affect only the section, clause or provision so declared to be unconstitutional, and shall not affect any other section, clause or provision of this act.

SEC. 22. That this act shall take effect and be in force from and after its publication in the official state paper.