No. 31,633

George C. Drum, Chris G. Rehm and B. C. Swisegood, as the Board of County Commissioners of the County of Wallace, *Plaintiffs*, v. Will J. French, as State Auditor, *Defendant*.

(25 P. 2d 579.)

Opinion filed October 7, 1933.

*E. R. Sloan, W. Glenn Hamilton* and *F. A. Sloan*, all of Topeka, for the plaintiffs.

*Roland Boynton*, attorney-general, and *W. C. Ralston*, assistant attorney-general, for the defendant.

The opinion of the court was delivered by

Thiele, J.: This is an action for a writ of mandamus, and arises under the cash-basis law (Laws 1933, ch. 319).

Wallace county issued its bonds in the sum of $47,696.49 to take up indebtedness as contemplated by the above statute, and the only question involved is as to the sufficiency of the posting of notices required by section 4 of the act, which reads, in part, as follows:

"The governing body of any municipality having any of the items of outstanding indebtedness mentioned in section 3 hereof shall, on or before May 5, 1933, post a notice in as many and at the same places within its territory as were used for voting places at the last general election, and at the office of its treasurer and clerk and at each schoolhouse and make publication of a similar notice in a newspaper inside the county, qualified to print legal publications, for three consecutive weeks, the first publication being in the first issue for legal publications of said paper subsequent to May 1, 1933. Such notice so posted and published shall contain not only the complete financial statement herein required, with full and complete totals and additions of the several items, but shall state that on or before the third Monday in June, 1933, a resolution will be duly passed and proceedings instituted for the issuance and sale of refunding bonds of such municipality to the amount necessary to retire and discharge such indebtedness existing on April 30, 1933, with interest to

July 1, 1933, where interest is payable, said bonds to be issued and sold in the same manner as now provided by law for the issue and sale of municipal bonds."

It is conceded by all parties that notices were posted at all voting places and at the office of the treasurer and clerk; that proper newspaper publication was made, but that notices were posted only on six of the twenty-seven schoolhouses in Wallace county, said six schoolhouses having been voting places at the last election.

All proceedings for the issuance of the bonds were fully had except as above stated. After the bonds were executed they were presented to the state auditor for registration, together with a transcript of proceedings showing the above facts. Owing to the fact that notices were not posted at all schoolhouses, the auditor refused to register the bonds, and this action followed.

Both parties, by analogy, argue from decisions rendered in election cases. The notice in question was not preliminary to an election, but there is some analogy, and the same will be referred to briefly.

On behalf of the plaintiffs, it is urged that the failure to post all the required notices is a mere irregularity, while the defendant urges that the notices are jurisdictional, and failure to post the same invalidates the bonds.

In the case of *State, ex rel., v. Echols,* 41 Kan. 1, 20 Pac. 523, this court, through Johnston, J., said:

"A well-defined distinction exists between general and special elections respecting the strictness to be observed in the manner of giving notice. In regard to general elections, the time for their occurrence and the officers to be voted for are definitely fixed by law; and as the electors are presumed to know the law, they are charged with knowledge of the time and purpose of the election, and the mere failure of the sheriff or other officer to post up or publish an additional or other notice will not invalidate the election. In such cases the provisions requiring additional notices are regarded as directory, the nonobservance of which will not generally vitiate the election. (*Jones v. Gridley,* 20 Kan. 587; *Wood v. Bartling,* 16 id. 109; *Morgan v. Comm'rs of Pratt Co.,* 24 id. 71.) In special elections, like the one we are considering, where the time is to be fixed by some officer or tribunal, a very different rule must necessarily be applied. While the law furnishes the authority for calling and holding a special election, it does not generally designate the time when it is to be held. In such cases the electors depend upon the notice required to be given, and not upon any knowledge derived from the law itself; and hence the right to hold such election at a specified time is the notice prescribed by the statute. It is therefore a mandatory provision, and the courts generally hold it to be essential that the prescribed manner shall be followed in order to give validity to the election." (p. 4.)

And in *Chanute v. Davis*, 85 Kan. 188, 116 Pac. 367, it was said:

"It may be freely conceded that failure to give notice of an election in the strict manner prescribed by statute is often regarded as an irregularity which does not invalidate the result. This is generally true of elections occurring at times and for purposes fixed by law. The law itself brings the election to the attention of the voter and apprises him of his opportunity to express his desire at the ballot box." (p. 190.)

And see 9 R. C. L. 990 and 20 C. J. 96, both of which state the rule to be that in general elections the time and place of holding the same being fixed by law, the notice is directory, but in case of special elections the time and place are not fixed by law but by some authority named in the statute after the happening of some condition precedent, and the giving of notice is mandatory.

While this court has usually followed the above rules, in *City of Aurora v. French*, 126 Kan. 393, 268 Pac. 93, it was held that a notice of special election, published before an ordinance providing for it became effective, was an irregularity which did not affect the validity of the election.

The procedure set forth in the act differs radically from a special election in this, at least, there is no choice to be made by the voters or taxpayers in any municipality. The governing body is obligated without excuse to the contrary to initiate and carry forward certain well-defined measures which shall definitely and positively result in the issuance of bonds to pay the valid indebtedness of the municipality as defined in the act.

The purposes to be accomplished by chapter 319 of the Laws of 1933 demand a new course of business administration by municipalities, and the provisions in some respects demand a radical departure from former proceedings. The validity of the act has been determined. (*State, ex rel., v. Board of Education*, 137 Kan. 451, 21 P. 2d 295.) In section 9 of the act it is provided that:

"The governing body shall proceed forthwith to pay off and discharge all of the indebtedness of such municipality as shown upon its final published statement, to the end that such municipality may, after May 1, 1933, operate on a cash basis, without other indebtedness or liabilities, except that covered by bonds previously issued or issued under the provisions of this act and this act shall be liberally construed for the achievement of said objectives."

The final published notice results from proceedings leading up to and following the adoption of the bond resolution, notice of which must be given, and the sufficiency of which notice is here involved.

The meeting to consider claims and to pass the resolution is required to be held (sec. 5), and neglect or refusal of any member of the governing body of any municipality to perform any duty is penalized (sec. 20). There is no provision in the act for correction of any omission such as we have under consideration here; no opportunity to postpone any meeting or hearing to enable the governing body to remedy a defect or supply an omission. The act provides a rather speedy program which shall result in a payment of all outstanding indebtedness, other than bonded indebtedness, by funds to be raised by sale of bonds or the use of bonds issued in accordance with the provisions of the act. No new debt is created or to be created under the statute, nor is anything to be done which will have the effect of depriving any person of his property. The sole purpose of the notice is that creditors may know certainly that their claims are included in the aggregate amount for which bonds are to be issued, and to afford an opportunity to ten or more taxpayers to appeal from any allowance they may believe improper.

We have here no situation where a creditor claims that failure to post the notices on the various schoolhouses has deprived him of his due from the municipality, or where ten or more taxpayers say that if such notices had been posted they would have protested the allowance of any allowed demand. In any event creditors and protestors must be presumed to know the law, and it is also to be presumed that with notices published in the newspaper and posted at every voting precinct and at the offices of the clerk and the treasurer, they had notice, and the failure to post the notice on every schoolhouse door did not prejudice them in any particular.

The statute itself demands a liberal construction that its objectives may be attained, and we are constrained to hold that, giving that portion of the statute requiring notice such construction, the provision for posting of notices on schoolhouse doors in Wallace county is directory and not mandatory, and the failure to post such notices on every such schoolhouse is an irregularity which does not affect the validity of the bonds.

The writ of mandamus will issue directing the state auditor to register the bonds.