No. 45,666

ROLLAND WEST, M. K. ROSS, L. C. MURROW, FAY McDONALD, S. W. EWING, N. C. WEST, VERNON MURROW, MAURICE BROWN, DONALD UNGEHEUER, WILBUR WEBBER, EDWIN THYER, CHESTER HERRMANN, ALFRED McVEY, ROBERT WILES, ROLLAND ROWE, JOHN D. LEWIS, ROBERT JOHNSTON, RUSSELL SPILLMAN, GEORGE SCHMITZ, T. F. EDMONDS, M. O. TOWNSLEY, HAROLD RHYNERSON, JOHN FOSDICK, KENNETH TINSLEY, MELVIN SMITH, WARREN HARRIS, KEITH MOYER, DONALD MURROW, and HARRY STITES, *Appellants,* v. UNIFIED SCHOOL DISTRICT No. 346, COUNTY OF LINN, STATE OF KANSAS, a Municipal Corporation, and ALLEN BROYLES, MAURICE COX, JOHN HERMAN, EUGENE MILLER, ALBERT IRWIN, and ELLWOOD STAMBAUGH, as Board Members of said Unified School District, and ELTHEDA KENNEDY, as Clerk of said Board, *Appellees.*

(460 P. 2d 103)

Opinion filed October 23, 1969.

*Orville J. Cole,* of Garnett, argued the cause and was on the brief for the appellants.

*Leighton Fossey,* of Mound City, argued the cause and was on the brief for the appellees.

The opinion of the court was delivered by

O'CONNOR, J.: This action was instituted by a group of taxpayers (appellants) against Unified School District No. 346 and its board members (appellees) to challenge the validity of a special bond election held June 14, 1968. The taxpayers have appealed from the judgment of the district court finding the proceedings valid and refusing to enjoin the sale and issuance of bonds authorized by the election.

Appellants question the validity of the election proceedings on the grounds: (1) The published notice of the bond election did not comply in certain particulars with the provisions of K. S. A. 1967 Supp. 72-67,114 (*f*) (Repealed, L. 1968, ch. 59, § 45); (2) there was a conflict between the wording of the board's resolution calling the election and the published notice and ballot; (3) the board adopted the resolution calling the election at a special meeting for which no written notice was given, nor were there waivers of such notice; and (4) the election was conducted by the county clerk instead of the board of education of the school district.

The facts are not in dispute. The territory of the district includes parts of both Linn and Bourbon counties. A special meeting of the district board was held May 20, 1968. All members of the board were present in person and participated in the proceedings. The minutes recite the purpose of the meeting was to determine a date for a bond election and to pass a resolution to call the election. The resolution provided in part:

"Section 1. That an election shall be called and held in said Unified School District on the question of issuing General Obligation Bonds in the amount of not exceeding $900,000.00 for the purpose of purchasing necessary site, constructing and equipping of necessary new school buildings in said district, this being the estimated cost of said improvements, all as provided by law, specifically Sections 72-6761 and 75-2315 to 75-2318, Kansas Statutes Annotated, and any amendments thereto, polling places for such election to be at the City Halls in Prescott, Blue Mound, and Mound City, Kansas. . . .

"Section 2. The Clerk of the District Court Board is hereby authorized and directed to call upon the County Clerk the 'official election officer' to join with said school board to give notice of said election, including the date, hours, polling place, and purpose thereof, in full compliance with all the requirements of law, by publishing in a newspaper of general circulation in said School District for three consecutive weeks, the first publication to be not less than twenty-one full days prior to said election."

The minutes of the special meeting indicate in two separate places the resolution was unanimously adopted, while in the third instance the minutes reflect one member of the board abstained from voting. Plans and suggestions for presenting the information to the public through news releases and by the mailing of brochures were also discussed at the special meeting.

Notice of the election was first published in the Mound City Republic, May 23, 1968. Pertinent portions of the notice are as follows:

". . . it is hereby ordered by the Board . . . and said order approved by the County Clerk of Linn County, Kansas, the 'County Election Officer,' that

### AN ELECTION

be held in said Unified School District No. 346, Linn County, Kansas (In Linn and Bourbon Counties, Kansas), on the 14th day of June, 1968, upon the question of issuing General Obligation Bonds in an amount not exceeding $900,-000.00 for the purpose of purchasing necessary site, constructing and equipping of necessary new school building in said District.

". . . the polling places shall be as follows:
City Hall in the City of Prescott, Kansas.
City Hall in the City of Mound City, Kansas.
City Hall in the City of Blue Mound, Kansas.
The vote shall be by ballot.

.    .    .    .    .    .    .    .    .    .    .    .

"Dated this 20th day of May, 1968.

"Published . . . for three consecutive weeks and for more than twenty-one full days before said election. . . .

"By Order of the Board . . .

ELLWOOD STAMBAUGH,
President, Board of Education,
Unified School District No. 346,
Linn County, Kansas

T. T. CONCANNON,
Treasurer

T. T. CONCANNON,
County Clerk, Linn County,
Kansas, 'County Election Officer.'

"ATTEST:
ELTHEDA R. KENNEDY,
    Clerk.
    (Seal)"

Prior to the election printed brochures containing information about the contemplated building, its location, cost, floor plan, capacity, and the fact it was to be for high school grades 9 through 12, were prepared and mailed by the superintendent of the school district to 1,947 residents and electors of the district. News articles explaining the election and describing the proposed building appeared in two local newspapers—the Mound City Republic and the Fort Scott Tribune.

Election boards were appointed by the county clerk, and the election was held June 14, 1968. The ballot proposition presented to the voters read in part as follows:

"SHALL THE FOLLOWING BE ADOPTED?

"Shall Unified School District No. 346 Linn County, Kansas (In Linn and Bourbon Counties, Kansas) issue and sell General Obligation Bonds of said Unified School District in the sum of not exceeding $900,000.00 for the purpose of Purchasing Necessary Site, Constructing and Equipping of necessary new school building in said district. All as provided for by Section 72-6761 and 75-2315 to 75-2318, Kansas Statutes Annotated and any Amendments Thereto?"

Returns from each election board were taken to the county clerk and tabulated by him. On June 17, 1968, after a canvass of the results by the board of county commissioners of Linn county, the commissioners certified the vote as follows:

"For the Bond issue . ................................. 809
Against the Bond issue ... ..... ....................... 803
Void Ballots ......................................... 19
Total Ballots ........................................ 1631"

At the next regular meeting of the district board the county commissioners' canvass was "joined in and approved" by the board.

The case was decided by the district court on a stipulated record. In the course of his memorandum opinion, the trial judge observed there was nothing in the record to indicate that any illegal votes were cast, that any persons who were not electors of the district voted, that any qualified electors were prevented from voting, nor that there was any misunderstanding among the electors or that they were misled in any respect. This same observation is borne out on appeal, for, as in the lower court, the substance of appellants' argument is that numerous irregularities and defects, particularly in the published notice, were of such substantial nature as to vitiate the election.

Turning to the alleged defects in the notice, we find the provisions of K. S. A. 1967 Supp. 72-67,114 (*f*), which was in effect and controlling at the time of these proceedings (see, *Masheter v. Vining,* 198 Kan. 691, 426 P. 2d 149), required the published notice of a special bond election to state:

". . . (1) the name of the unified district, (2) the date of the bond election, (3) the purpose for which the bonds are to be issued, (4) the amount of bonds to be issued, (5) the proposition to be voted upon, (6) the hours of opening and closing of the polls, (7) the voting place or places and the territory each voting place is to serve, (8) the amount and purpose of the bonds proposed to be issued, and (9) the address of the election headquarters of the officer or board conducting the election."

Appellants urge that the purpose for which the bonds were to be issued, as stated in the notice—"purchasing necessary site, constructing and equipping of necessary new school building in said District"—was so vague and indefinite that an elector had no way of knowing whether the proposal was to build a grade school, junior high school or high school. The purpose stated in the ballot proposition submitted to the electors (K. S. A. 1968 Supp. 25-605) corresponded verbatim with that in the notice.

The election in question was authorized under the provisions of K. S. A. 72-6761, which provides in part:

". . . When a board determines that it is necessary to purchase . . . a school site . . . or to construct, equip . . . any building . . . used for school purposes, . . . such board may submit to the electors of the unified district the question of issuing general obligation bonds for one or more of the above purposes, . . ."

The wording of the notice and ballot went no further than the general wording of the purposes stated in the statute.

The obvious intent of the legislature, in requiring the notice to state the purpose for which bonds are to be issued, was to make certain the question to be voted upon was clearly stated so that the electors would not be misled thereby. Equally important is that the ballot state the purpose with clarity. Since bonds may be issued only for such purposes as authorized by statute, with the approval of the electors, each voter must have a fair opportunity to register an intelligent expression of his will. The fundamental principle running through all the cases is that the election laws contemplate that when a special proposition is submitted to a popular vote, the ballot (as well as the notice) shall clearly state the *substance of the*

*question to be voted upon* by the electors. The decisions of this court on the subject are extensively reviewed in *Unified School District v. Hedrick*, 203 Kan. 478, 454 P. 2d 536; *Wycoff v. Board of County Commissioners*, 189 Kan. 557, 370 P. 2d 138; *City of Coffeyville v. Robb*, 165 Kan. 219, 194 P. 2d 475; *Board of Education v. Powers*, 142 Kan. 664, 51 P. 2d 421.

We are of the opinion, under all the circumstances presented, that the purpose stated in the notice and ballot was sufficient to apprise the electors of the issue they were voting upon. In light of the widespread publicity made available to the electors by the mailed brochures and newspaper articles, there could be no doubt whatever that the bonds were to be used to construct a high school building. These items of information, although clearly not a substitute for the official notice required by statute, may nevertheless be considered as supplemental thereto in determining whether the electorate was fully informed on the matter to be voted upon. (See, *State, ex rel., v. Lane Rural High School District*, 173 Kan. 1, 243 P. 2d 232; *Eastern Kansas Utilities, Inc., v. City of Paola*, 165 Kan. 558, 196 P. 2d 199; 29 C. J. S., Elections § 73.) Out of approximately 1,947 electors in the district 1,631 voted in the election, yet no contention is advanced that any voter was misled in respect to the purpose for which the bonds were to be issued.

Along the same vein, appellants urge the "proposition to be voted upon" was not set out in the published notice. True, the word "proposition" was not used; the notice merely stated an election would be held "upon the question of issuing General Obligation Bonds. . . ." The word "question" is defined as a proposition to be voted on. (Webster's Third International Dictionary, Unabridged.) We perceive nothing misleading in this respect, and are of the view the proposition to be submitted was adequately stated in the notice.

Likewise without substance is appellants' assertion the notice and ballot were indefinite because the specific amount of bonds was not stated but only a ceiling—"not exceeding $900,000.00." In *Gray v. Joint Rural High School District No. 9*, 178 Kan. 387, 286 P. 2d 147, the court stated:

"It is to be noted further that the proposals were to vote bonds in an amount *not to exceed* a stated amount. Any contention that the exact amount of bonds to be issued was not stated and therefore the elections were illegal cannot be sustained. At the time of the elections there was nothing to indicate the full

amount would not be issued and sold. . . . At the time the present elections were called and when they were held the total cost of the improvement was an estimated cost and not a finality. Had the improvement cost less than the estimated cost, the bond issue would have been limited to the actual cost and expenses of such improvement (G. S. 1949, 10-104). . . ." (pp. 393-394.)

Finally, appellants complain that the notice designated three polling places but the territory to be served by each was not stated, as required by the statute. This constituted an irregularity and a departure from what we regard a directory provision of the statute; but on this record the validity of the election was unaffected. While time and manner of notice may be regarded as mandatory, and strict compliance a necessity (*Baugh v. Rural High School District*, 185 Kan. 123, 340 P. 2d 891, and cases therein cited; *cf., Drum v. French*, 138 Kan. 277, 25 P. 2d 579; 26 Am. Jur. 2d, Elections § 198), a departure from a directory provision does not necessarily compel annulment of an election. In *Stanhope v. Rural High-school District*, 110 Kan. 739, 205 Pac. 648, this court said:

"We have often held that irregularities in elections, where there had been departures from directory provisions of the statute, did not vitiate such elections where such irregularities did not frustrate or tend to prevent the free expression of the electors' intentions, nor otherwise to mislead them. . . ." (p. 744.)

Here, there is absolutely no showing that any person voted who was not entitled to vote, or that any voter voted at more than one polling place, or that any qualified elector was prevented from voting because of the irregularity.

For the reasons discussed, we hold that the published notice substantially complied with the provisions of K. S. A. 1967 Supp. 72-67,114 (f).

A further contention raised by appellants is that an inconsistency existed because the resolution of the board calling the special election used the word "buildings" but the notice of election and ballot proposition referred to "building." We cannot regard this irregularity fatal to the election. For all we know, the discrepancy may have been a typographical error, for the notice and ballot, as well as the brochures and newspaper articles, clearly disclose the board contemplated the erection of only one building. The case of *Honohan v. United Community Sch. Dist.*, 258 Iowa 57, 137 N. W. 2d 601, relied on by appellants, is neither analogous nor persuasive. There, the petition requesting a special election, the resolution

calling the election, and the notice of election, all referred to the building of a "new schoolhouse," whereas the ballot stated the question was construction of a "new senior high school building." This was held to be a substantial variance and voided the election. The court, after noting the terms "schoolhouse" and "senior high school" were not synonymous, stated that the people were compelled to vote on a proposal which, as far as the record disclosed, they had neither heard about nor considered prior to the challenged election.

Appellants also challenge the validity of the resolution adopted by the board May 20, 1968, because no written notice of the special meeting was given, nor were there waivers thereof, as required by K. S. A. 1968 Supp. 72-8205. The statute, in part, provides:

". . . Special meetings may be called at any time . . . Written notice, stating the time and place of any special meeting and the purpose for which called, shall, unless waived, be given each member of the board at least two (2) days in advance of said meeting and no business other than that stated in the notice shall be transacted at such meeting. . . ."

The fact there were neither written notices of the meeting nor written waivers is conceded. The record discloses, however, that all members of the board were present and participated without objection in the business before the board. The situation is not unlike a special meeting of the council of a city of the third class at which the mayor, clerk, and all members of the council are present and participate in matters coming before the council for consideration where the statutory requirement of written request and formal call of such meeting (K. S. A. 15-106) is deemed to have been waived. (*Bluff City v. Western Light & Power Corp.*, 137 Kan. 169, 19 P. 2d 478.) Under the circumstances, we think the written. notice required by the statute was effectively waived and the proceedings had were valid. The rule is well stated in 78 C. J. S., Schools and School Districts § 123b:

". . . where all the members of a board are present and participate in a meeting thereof they may take official action, and the fact that no notice of such meeting was given, or no formal call was issued, . . . is immaterial to the validity of the proceedings. . . ." (p. 913.)

As their last point appellants urge the special election was void because the board abdicated its responsibility for conducting the election by turning the matter over to the county clerk of Linn county. The election law on June 14, 1968, was in a transitional

stage. Chapter 406 of the 1968 Session Laws had been enacted, and provided in essence for the county clerk, as "county election officer," to conduct all national, state, county, township, city, and school elections and "question submitted elections" held on the same day as any national, state, city or school primary or general election. No mention, however, was made about "question submitted elections" held on other days, such as the election here. Thus, the board of education of a unified school district remained responsible for conducting its own election. (See, K. S. A. 1967 Supp. 72-6752.) Chapter 59 of the 1968 Session Laws, which did not become effective until July 1, 1968, placed the responsibility for conducting a "question submitted election" on the county election officer, who in this instance was the county clerk.

The record discloses the board proceeded to call the election and, apparently out of an abundance of caution, requested the county clerk, as county election officer, to join with it in holding the election. The notice was signed by the board as well as by the county election officer. As previously indicated, the canvass of the results by the board of county commissioners was "joined in and approved" by the board. These facts fail to sustain appellants' argument that the board abandoned its responsibility. In the absence of any showing that the results would be changed, or that the electors were prejudiced or confused in any way, the procedure followed by the board, while perhaps irregular, did not vitiate the election.

The judgment of the district court upholding the validity of the election and denying injunctive relief is affirmed.