Winton Hinkle, Bond Counsel Unified School District No. 465 2000 Epic Center 301 N. Main Street Wichita, Kansas 67202
William Muret, Counsel Unified School District No. 465 920 Mullington Winfield, Kansas 67156
Dear Messrs. Hinkle and Muret:
As bond counsel and legal counsel, respectively, for Unified School District No. 465, you join in asking whether the Attorney General would certify bonds sought to be issued by the District. You raise the issue because a notice of election that was published as part of the procedure for issuing the bonds authorized under K.S.A. 72-6761 does not comply with statutory requirements. Concerns regarding the notice were initially raised by the District's bond counsel during telephone conversations with this office. The bonds have not been sold, apparently due to counsel's concern over this issue, and thus a transcript has yet to be submitted to this office for review.
FACTS AS PROVIDED
The Board of Education for Unified School District No. 465 (U.S.D. No. 465) determined in January, 2003 that it was necessary to undertake several capital improvement projects and to issue bonds to pay the costs of those improvements.[1] The amount of bonds required to pay the costs exceeded the District's bond debt limitation.[2] The District followed the procedure established in Article 23 of Chapter 75 of the Kansas Statutes Annotated and received approval from the State Board of Education to present to the District's electors the question on whether these bonds in excess of the bond debt limitation should be issued.[3]
The Board of Education for U.S.D. No. 465 opted to conduct the bond election pursuant to the Mail Ballot Election Act.[4] The projects were presented on the ballot as two proposals: The first regarding $17,000,000 for construction of a new 7th and 8th grade center, renovation of an existing center for accommodating 5th and 6th grade pupils, purchase of computers and other technology improvements, and repair or remodeling of other facilities; the second dealing with $7,000,000 for improving, repairing, remodeling and making additions to five named elementary schools. Bond counsel prepared a notice of election that was to be published in a newspaper of general circulation in the District. The prepared notice, in meeting the requirements of K.S.A. 10-120 and 10-120a, set out the questions that were to be voted on by the electors and information regarding the costs of the projects, principle and interest due on the bonds, the tax consequences of the issuance, and the amount of expenses incurred in issuing the bonds. The notice that was submitted by the Cowley County Clerk to the newspaper and was subsequently published stated:
 "NOTICE OF SPECIAL ELECTION UNIFIED SCHOOL DISTRICT 465 "Pursuant to K.S.A. 72-6761, The Board of Education of Unified School District 465 Cowley County, Kansas, Winfield has determined that it is necessary to make improvements pursuant to the provisions of the aforesaid law. The Board desires to submit to the electors of the School District the question of issuing general obligation bonds in an amount sufficient to pay the costs of making the improvements and to provide for the conducting [of] the special bond election under the authority of the `Kansas Mail Ballot Election Act,' K.S.A. 25-431 et seq.
 "Whereas a Special Mail Ballot Election will be held June 3, 2003, Ballots will be mailed to all registered voters residing in Unified School District 465. Said ballots will be counted in the Cowley County Courthouse June 3, 2003."[5]
U.S.D. No. 465 mailed to the residents of the District a pamphlet that included information about the amount of bonds that would be issued for each proposal, the types of projects that would be undertaken, and the possible effect on the mill rate and tax payments for property owners. Information regarding various aspects of the proposals and the bond election was also provided through the local newspaper, public meetings, presentations and the internet. Forty-three percent of the mail ballots were returned by voters to the county election officer. The two bond propositions were approved 1,597 to 852 and 1,686 to 742.[6]
ELECTION NOTICE
"School districts and other subdivisions of the state have only such powers as are conferred upon them by statute, specifically or by clear implication, and any reasonable doubt as to the existence of such power should be resolved against its existence."[7] A unified school district is authorized to issue general obligation bonds under those situations set forth in state statute.
"The board of education of a school district is authorized to select any site or sites necessary for school district purposes. When a boarddetermines that it is necessary to purchase or improve a site or sites,or to acquire, construct, equip, furnish, repair, remodel or makeadditions to any building or buildings used for school districtpurposes, including housing and boarding pupils enrolled in an areavocational school operated under the board, or to purchase school buses,the board may submit to the electors of the unified district the questionof issuing general obligation bonds for one or more of the abovepurposes, and upon the affirmative vote of the majority of those votingthereon, the board shall be authorized to issue the bonds. The board shall adopt a resolution stating the purpose for which bonds are to be issued and the estimated amount thereof. The board shall give notice ofthe bond election in the manner prescribed in K.S.A. 10-120, andamendments thereto, and the election shall be held in accordance with the provisions of the general bond law. No action shall be brought in any court to contest the validity of any election held under this subsection, nor to contest any of the proceedings preliminary thereto, except within 90 days immediately following certification of the results of the election. The aggregate amount of bonds of a board outstanding at any time, exclusive of bonds specifically exempted from statutory debt limitations, shall be limited to 14% of the assessed valuation of taxable tangible property within the school district, except that such limitation may be modified as provided in article 23 of chapter 75 of Kansas Statutes Annotated. The bonded debt limitation prescribed by amendment of this subsection shall not be applied in any manner so as to affect the validity of any bonds of a board which are outstanding on the effective date of this act."[8]
The notice of a bond election called pursuant to K.S.A. 72-6761 must be published in a newspaper of general circulation in the school district once each week for two consecutive weeks, with the first publication occurring not less than 21 days prior to the election.[9] The notice is required to include the time and place for holding the election and the purpose for which the bonds are to be issued[10] as well as:
"(1) The total amount of the bonds to be issued;
 "(2) the amount of such bonds which represent the actual cost of the project financed by the bonds to be issued;
 "(3) the projected amount of interest to be paid until the bonds are retired. Such projected amount shall be determined by using the interest rate from most recent bond issuances for the financing of similar projects by similar municipalities;
 "(4) the projected amount of all expenses incurred in such bond issuance including, but not limited to, attorney fees, underwriter fees and the cost of printing such bonds;
 "(5) the projected amount of the annual payments for principle and interest on the bonds;
 "(6) the projected annual rate of taxation and the source of taxation necessary to retire such bonds; and
 "(7) any other information deemed necessary by the governing body of the municipality to provide full disclosure relating to the proposed bond issue."[11]
The notice of election that was ultimately provided to the electors of U.S.D. No. 465 through the newspaper publication clearly fails to include the information required in K.S.A. 10-120a.
EFFECT ON ELECTION
The court is reluctant to void the results of an election.
"Ordinarily an election should not be declared void unless it is shown that the result is not in accordance with the will of the electorate or that such will cannot be ascertained because of uncertainties. Public policy requires courts to uphold the validity and declared results of elections which have been properly and fairly conducted or which do not clearly appear to have been illegal. The courts should go to extreme lengths to preserve the validity of all elections, and be slow and reluctant to override the clear intent and purpose of the electorate. An election should not be declared a nullity if on any reasonable basis such a result can be avoided."[12]
The court, however, has always applied a strict rule as to notice provisions when the power of taxation is to be exercised through a special election.[13] Voters expect and have the right to receive official notice of the date and issues to be submitted in a special election.[14]
Failure to include directory information in the notice of election does not invalidate an election.[15] However, "[t]he statutory provisions for notice of a special election are mandatory rather than directory, and failure to comply with such mandatory provisions renders the election void."[16] The Kansas Supreme Court has determined that special elections are void when the notice of election is not timely made,[17]
the nature and cost of the project are not fully disclosed,[18] or the notice does not clearly state the project.[19] Failure to include the required information is not cured by dissemination of the information through circulars published by the school district.[20] "[P]ublicity by other means is not sufficient to render the failure to publish the prescribed notice for the required time a mere irregularity."[21]
These standards continue to be applicable to special elections in which bond issues are presented to the electors. The notice provided to the electors of U.S.D. No. 465 did not provide information on the types of projects that would be funded through the bonds, the amount of bonds to be issued, the cost of the projects, the estimated annual payments for principle and interest on the bonds, or the projected annual rate of taxation necessary to retire the bonds. Providing at least some portion of such information is a mandatory requirement. Therefore, applying the existing case law, it is determined that the special election conducted on June 3, 2003, in which electors of U.S.D. No. 465 voted on whether bonds should be issued for the purpose of obtaining funds for construction and renovation of school buildings is void.
The Legislature has attempted to save elections when irregularities have occurred in the election process.
"Notwithstanding the fact that the provisions of law may not have been fully complied with in noticing and conducting a question submitted election and so that the real will of the people may not be defeated by any technical irregularity of any officer, whenever the greater number of votes were in favor of a question submitted, the question shall be deemed to have carried and likewise if the greater number of votes were against a question submitted, the question shall be deemed not to have carried."[22]
The statute was enacted in 1987[23] and has not yet been cited in a court opinion or opinion of the Attorney General. A similar statute has applied to candidacy elections since early statehood.[24] The handful of cases in which that statute has been cited have not involved matters of notice.[25]
K.S.A. 25-716 has the effect of saving elections in which technical irregularities on the part of officers have occurred. "It is presumed that the legislature understood the meaning of and intended the words used and that the legislature used the words in accordance with their ordinary and common meaning."[26] The statute does not validate an election in which substantive matters are overlooked. The notice of election provided to the electors of U.S.D. No. 465 omitted such a vast extent of mandatory information that the errors cannot be deemed to be merely technical irregularities. The results of the special bond election conducted on June 3, 2003 are not preserved through K.S.A. 25-716.
FREQUENCY OF BOND ELECTIONS
State statute restricts the frequency during which bond elections may be called by unified school districts.
"No school district shall call or hold more than one special bond election at a time other than a general election or the election of board of education members within any one calendar year; nor shall any special bond election be held within sixty (60) days before or after a general election or election of members of the board of education of such district."[27]
The rules of statutory construction require that a statute be interpreted to give it the effect intended by the legislature and construed to avoid unreasonable results.[28] A void election is null.[29] The proceeding has absolutely no legal force or effect and may be treated as though it has not taken place.[30] We believe that the intent of the Legislature in enacting this provision was to preclude a school district from calling a second special bond election during a calendar year when the electorate has previously expressed its opinion through a valid special election. To preclude a unified school district from calling a valid special bond election during a calendar year when errors by officials not connected with the school district void an election would appear unreasonable and counter to the Legislature's intent. In the present situation, through no fault of the officials of U.S.D. No. 465, a valid election has not been called and conducted. Therefore, K.S.A. 25-2019 does not prohibit the Board of Education for U.S.D. No. 465 from calling another special bond election during the calendar year.
In review, the Kansas Supreme Court has always applied a strict rule as to notice provisions when the power of taxation is to be exercised through a special election. Voters expect and have the right to receive official notice of the date and issues to be submitted in a special election. The notice for a special bond election must comply with mandatory provisions. Failure to do so renders the election void. The notice provided to the voters of U.S.D. No. 465 did not include information regarding the types of projects that would be financed through the bonds, the costs of the projects, the total amount of bonds to be issued, the projected amount of interest to be paid on the bonds, the projected amount of annual principle and interest payments, or the projected rate and source of taxation required to retire the bonds. Under such circumstances, the electors of U.S.D. No. 465 did not receive official notice of the special bond election that was conducted on June 3, 2003. The election is void, and U.S.D. No. 465 does not have authority to issue bonds pursuant to K.S.A. 72-6761. Because no valid special bond election has been called and conducted, K.S.A. 25-2019 does not prohibit the Board of Education for U.S.D. No. 465 from calling a special bond election during the remainder of the 2003 calendar year.
Sincerely,
 PHILL KLINE Attorney General of Kansas
 Richard D. Smith Assistant Attorney General
PK:JLM:RDS:jm
[1] Resolution No. 01-03, Unified School District No. 465, January 6, 2003.
[2] See K.S.A. 72-6761(a).
[3] Notice of the intention to apply to the State Board of Education for such approval was given to the electors of the District by a publication in a newspaper of general circulation in the District. Winfield Daily Courier, January 10, 2003. See K.S.A. 75-2317.
[4] K.S.A. 25-431 et seq.
[5] Winfield Daily Courier, May 23, 2003.
[6] Certification of Canvass of Votes, June 6, 2003.
[7] Hobart v. Bd. of Ed. for Unified School District No. 309,230 Kan. 375, 383 (1981).
[8] K.S.A. 72-6761 (emphasis added).
[9] K.S.A. 10-120.
[10] Id.
[11] K.S.A. 10-120a(b).
[12] Thomason v. Stout, 267 Kan. 234, 238 (1999), quoting Lambeth v. Levens, 237 Kan. 614, 621 (1985).
[13] Lambert v. U.S.D. No. 237, Smith County, 204 Kan. 381, 383
(1969).
[14] State ex rel. Beck v. Bd. of Allen County Comm'rs, 143 Kan. 898,901 (1936).
[15] Kimsey v. Bd. of Education, U.S.D. No. 273, 211 Kan. 618, 628-29
(1973) (notice authorized some voters to vote at several different polling places rather than each polling place serving one area; provision is directory; electors not misled); West v. U.S.D. No. 346, Linn County,204 Kan. 29, 35 (1969) (notice did not designate areas to be served by polling places; directory requirement); Stanhope v. Rural High SchoolDistrict, 110 Kan. 739, 741 (1922) (notice itself is mandatory, but the form, printed or typewritten, is directory).
[16] Lambert, 204 Kan. at 383, quoting Baugh v. Rural High SchoolDistrict, 185 Kan. 123, Syl. ¶ 3 (1959).
[17] Lambert, 204 Kan. at 384 (due to transfer of territory following second publication of notice, 21-day notice of election was not provided to all electors); Baugh, 185 Kan. at 133 (applicable statute required 21 clear days of notice).
[18] Heller v. Rounkles, 171 Kan. 323 (1951) (notice did not include the total cost of the project and the source of funds that were to cover the difference); Henson v. Sch. Dist. No. 92, 150 Kan. 610 (1939) (notice did not include the amount of federal funds that would be used); Bd. ofEd. of City of El Dorado v. Powers, 142 Kan. 664 (1935) (notice did not include total cost of project as federal funds that would be applied were excluded).
[19] Byer v. Rural High Sch. Dist. No. 4, Brown County, 169 Kan. 351
(1950) (notice did not state that the building was to be moved).
[20] Henson, 150 Kan. at 612.
[21] City of Chanute v. Davis, 85 Kan. 188, Syl. ¶ 1 (1911).
[22] K.S.A. 25-716.
[23] L. 1987, Ch. 126, § 1.
[24] K.S.A. 25-702.
[25] The Kansas Supreme Court in Wood v. Bartling, 16 Kan. 109 (1876), appears to apply K.S.A. 25-702 without specifically citing it. In that case, the Court determined that a person who had received the second highest number of votes for justice of the peace was not elected to the office when the proclamation calling the election and the election notice stated erroneously that only one justice of the peace was to be elected. The case is of little assistance in reviewing the present situation.
[26] In re Searcy, 49 P.3d 1, 5 (Kan. 2002).
[27] K.S.A. 25-2019.
[28] Lacy v. Kansas Dental Board, 58 P.3d 668, 675-76 (Kan. 2002).
[29] Lambert, 204 Kan. at 384.
[30] See Black's Law Dictionary 963 (1979).