## BOARD OF COMMISSIONERS OF THE COUNTY OF DECATUR *v.* GREENSBURG TIMES.

[No. 27,197. Filed February 27, 1939. Rehearing denied May 1, 1939.]

472

*John W. Wood, Raymond Rolfes,* and *Wickens & Wickens,* for appellant.

*John W. Goddard, Robert A. Creigmile,* and *Turner & Woodfill,* for appellee.

SHAKE, J.— Appellee filed a claim with the Board of Commissioners of Decatur County for publishing certain legal notices. The claim was disallowed by the board and an appeal taken to the circuit court. The complaint was answered by general denial; a change of venue from the county followed; the cause was tried by jury and resulted in a verdict in favor of appellee. The errors assigned relate to the overruling of the appellant's motion for judgment on the answers to interrogatories and to the denial of its motion for a new trial.

The appeal calls for the consideration of the provisions of chapter 96, Acts 1927, §§49-701 to 49-709 Burns 1933, §§10201 to 10209 Baldwin's Ind. St. 1934. After deleting the parts of the act that are not pertinent here, it provides:

> "In all cases where county . . . officials are required by law to publish notices . . . and reports affecting county . . . business . . . such officials are hereby required to publish such notices . . . in two (2) newspapers representing the two (2) political parties casting the highest number of votes at the last preceding election published in such county . . . All notices and reports affecting county business shall be published in two (2) newspapers published in such county . . . If only one (1) of said political parties is represented by a newspaper published in such county, then such county notices and reports shall be published in such newspaper and also in any newspaper of general circulation published in the county. . . . The term 'newspaper' as used in this act shall be construed to mean a weekly, semi-weekly, tri-weekly or daily newspaper which shall have been published for five (5) consecutive years in the same city or town . . . (§49-704 Burns 1933, §10204 Baldwin's, *supra*.)

"The cost of all advertising growing out of any duty of any county . . . officer . . . shall be, by such officer, charged up, collected, and paid over to the printer. . . . When such printing is done for any county . . . the proper officer shall have the claim allowed and shall pay the same from the proper fund out of the public treasury, according to the rate herein fixed . . . (§49-701 Burns 1933, §10201 Baldwin's, *supra*.)

"In case any officer charged with the duty of publishing any notice required by law shall be unable to procure such advertisement at the price herein fixed, it shall be sufficient for him to post up such written or printed notices as the law requires, and such advertisement in newspapers shall be dispensed with" (§49-702 Burns 1933, §10202 Baldwin's, *supra*.)

The act also contains a fixed schedule of rates for printing and publishing legal notices, and it makes any officer who fails or refuses to comply with the provisions thereof guilty of a misdemeanor.

It is conceded that the notices published by the appellee, and for which it made claim, were required by law to be published. There is no contention that the amount of the claim is incorrect or that the charge made therefor is not in accordance with the schedule fixed in the statute. From the evidence it appears that the appellee voluntarily printed and published the notices without authority or direction from the county auditor or any other public official. The appeal presents two questions: (1) was the Greensburg Times such a newspaper as to be legally entitled to publish said notices; and, if so, (2) was the county liable to be charged therefor in the absence of an order from its authorized agent directing such publication?

1.

It was not disputed that the Times was published in the city of Greensburg for more than five consecutive

years. The fact that it changed ownership and ▮ missed a few numbers during that period did not disqualify it. *Lee* v. *Burns* (1932), 94 Ind. App. 676, 182 N. E. 277. Its political affiliation was immaterial since there were but two newspapers published in the county, the other representing one of the political parties casting the highest number of votes at the last preceding election. This leaves open but one other inquiry: was the Times a newspaper of general circulation? The verdict of the jury was a finding for the appellee on that issue and we will not disturb the finding if there is competent evidence to sustain it. Appellant contends that the Times was not a good faith newspaper because it had no office, equipment, or plant of its own, but was printed by the publishers of the Greensburg News, the other paper of the county. The evidence showed that appellee was a private corporation and that it contracted with the News to issue the Times. Some of the stockholders of the Times company were also financially interested in the News. Appellee's sole employee was an editor and the only local news appearing in the columns of its paper, aside from editorial comment, was material that likewise appeared in the News. It was further disclosed that the legal notices for which appellee sought to recover were printed on the same type composition on which they were printed in the News. Since appellee was a separate and distinct corporate entity and its only connection with the other paper and its publishers was the subject and result of legitimate contract dealings, we cannot say that the Times was not a bona fide newspaper. The statute contains no definitions or restrictions that would disqualify it on that ground.

It is next urged that the Times did not have a general circulation in the sense of the statute above quoted. What

amounts to general circulation in the case of a newspaper publishing legal notices has been many times considered by the courts. The subject is exhaustibly treated in an annotation found in 16 Ann. Cas. 417. General circulation as applied to a newspaper depends largely upon diversity, rather than on mere number of subscribers. That which will be of general circulation in a town of small population cannot be said to be general in a populous city. 46 C. J., p. 22. *Lynn* v. *Allen* (1896), 145 Ind. 584, 44 N. E. 646, 33 L. R. A. 779, 57 Am. St. Rep. 223, holds that by the use of the term "newspaper of general circulation" in a statute providing for the publication of legal notices, the Legislature did not intend a newspaper read by all of the people of the county. It was pointed out that political newspapers, to a large extent, are read only by the members of the party whose doctrines are advocated and expressed in their columns. It may be noted, in that connection, that the statute which we are here considering not only authorizes the publication of legal notices in political newspapers, but requires that this be done when such newspapers are available. In *Ruth* v. *Ruth* (1906), 39 Ind. App. 290, 79 N. E. 523, it was observed that the general circulation of a newspaper is necessarily comparative, but that no fixed number of subscribers is required to constitute general circulation. That case sustained a finding that the Morgantown Truth, with a circulation of 520, two-thirds of which was in Morgan County, was of general circulation in that county.

The evidence is sufficient to establish that the Times had approximately 700 subscribers when the legal notices, for the publication of which appellee seeks to recover, were published. These subscribers were distributed in each of the nine townships in Decatur County. Some 370 of these were

already subscribers when appellee acquired the paper; 200 were added when the Recorder, another newspaper formerly published at St. Paul, in said county, was merged with the Times; and 49 additional persons became subscribers under appellee's management. Copies of the paper containing the legal notices were introduced in evidence and are in the record. From these it appears that the Times is the usual type of local weekly newspaper, containing press dispatches, neighborhood news, and personal items. It does not purport to be the organ of any society, lodge, trade, or group. The evidence is sufficient to sustain the finding of the jury to the effect that the Times was a newspaper of general circulation.

## 2.

Appellant contends that the judgment appealed from cannot stand for the reason that no order was made by the auditor, or anyone else clothed with authority to bind the county, for the publication of the legal notices printed in the Greensburg Times. It is appellant's position that the statute providing for the publication of county notices merely authorizes the proper officials to contract for such service and that, in the absence of contract, there can be no recovery. Generally speaking, contracts are of two kinds, express and implied. That appellee had no express contract with the county must be conceded. And it has been held that the theory of implied contract, *quantum valebat,* cannot be invoked against a county. *Stropes* v. *Board of Commissioners of Greene County* (1880), 72 Ind. 42. Appellee's right to recover, if any exists, must therefore be predicated upon some other doctrine than the law of contract. Such a right is indicated by the language used in *Moon* v. *Board of Commissioners of Howard County* (1884), 97 Ind. 176. In that case Elliott, C. J., said (p. 177):

"A claim against a county for services can exist only where there is a contract, *or where there is a statute providing for them and directing compensation.* No person can voluntarily perform services for a county and demand compensation *except in cases provided for by statute,* and one who demands compensation for services rendered to a county must show a contract made under due authority of law with the proper officers, *or else show a statute making provision for such services.* The right to a recovery is not made out by showing the beneficial character of the services, but the claimant must also show either a contract, *or a statute making provision for such services.*"

To emphasize the rule applicable to the present situation we have taken the liberty to italicize those parts of the quotation which we deem pertinent. To the same effect are *Sherfey, etc., Co.* v. *Board, etc.* (1901), 26 Ind. App. 66, 59 N. E. 186, and *Borror* v. *Carrier* (1905), 34 Ind. App. 353, 73 N. E. 123.

The Sherfey case, *supra,* was an action based on a statute in force at the time which made it the duty of township trustees to cause to be interred in a respectable manner in some burial ground other than one used exclusively for the burial of the pauper dead, at an expense not to exceed $50, the body of any honorably discharged ex-Union soldier, sailor, or marine having served in the Army or Navy of the United States, who should die a resident of the state not leaving means sufficient to defray the necessary funeral expenses, or having a family in such indigent circumstances that they would be distressed by the expenses of such burial. §8359 Burns 1894. Section 8360 of said statute made it the duty of any trustee, before assuming the expense of such a burial, to satisfy himself of the existence of the facts and conditions required by the preceding section. Section 8362 provides that the expenses incurred in any such burial should be allowed by the board of commissioners and paid out of the county treasury, the same as

other legal charges against the county were allowed and paid. A claim was attempted to be asserted against a county for the burial of an honorably discharged Union soldier by the funeral director who had performed said service. The decedent was shown to have been a person whose situation was within the contemplation of the act. His body was found in a high state of decomposition and presented a situation inimical to the public health. The township trustee was absent from his office and could not be located. Due to the stress of the emergency the claimant buried the body without directions from the trustee. Denying the claim the Appellate Court said (p. 70):

> "It affirmatively appears from the averments of this paragraph that the services for which appellant seeks to recover were not authorized by this officer; but reliance is based upon the showing of an emergency in the interest of public health for doing the acts for which a recovery is sought. A claim for services against a county can only be founded upon a statute or a contract entered into under authority of law with the proper officer acting within the scope of his authority. The mere beneficial character of the service is not sufficient to support the claim. . . .
> "The benefactions of the State are to be dispensed pursuant to a plan drawn by the legislature, under the direction of designated officers. . . . The opinion of a private citizen as to the necessities or emergency of the case will not create a claim against the county. It may be in the case before us that the conditions required immediate burial of the deceased before the trustee could be found. Still this action cannot be maintained because neither statute nor contract authorized the service for which the charge is preferred."

It is to be noted that the case at bar is fundamentally different from the Sherfey case. Appellee, under the existing facts, had an absolute and exclusive right to publish county legal notices. The auditor was vested with

no discretion to deny that right. In the Sherfey case the claimant had no rights whatever against the county, in the absence of a contract. Any other funeral director might have performed the burial services for which claimant sought to recover in the Sherfey case, had he been designated for that purpose by the township trustee. But the Sherfey case does recognize the rule laid down in *Moon* v. *Board of Commissioners of Howard County, supra,* that a situation may arise under a statute whereby a claimant against a county may be entitled to recover in the absence of an express or implied contract.

The principle upon which this appellee is entitled to recover is known in law as the doctrine of quasi or constructive contracts. Quasi contracts are a class of obligations which are imposed or created by law without regard to the assent of the party bound. They rest solely on a legal fiction and are not contracts at all in the true sense, for there is no agreement. They arise from law or natural equity and are clothed with the semblance of contracts merely for the purposes of the remedy. Among the instances out of which quasi or constructive contracts may arise are those where there is a legal duty to pay, independent of any contract relationship, coupled with a consideration moving to the party sought to be charged. The law of quasi contracts is exhaustibly considered in 12 Am. Jur., p. 502, et seq., where many authorities to sustain it are grouped and cited. Every element of the doctrine is present in the case before us. Appellant was required by law to publish its legal notices in appellee's newspaper; the manner and frequency of publication and the charges to be made for the service were specifically covered by the statute. Nothing was left to the discretion of the officials directed to see that such publications were made. Without publication of the notices, the action of the

board of commissioners in respect to the matters to which they related would have been null and void, and the county auditor liable to criminal prosecution. Appellee published the notices and the county may not now be heard to say that it is not liable because its agents did not do their duty. To hold otherwise would be to permit the county to reap the benefits of its own wrong.

The judgment is affirmed.

Tremain, C. J., not participating.

Roll, J., absent.

### ON PETITION FOR REHEARING.

SHAKE, J.—Appellant has presented a petition for rehearing and a brief in which it is forcibly urged that the opinion of this court does violence to a section of the County Reform Act (ch. 154, §33, Acts 1899, §26-533 Burns 1933, §5398 Baldwin's 1934), which provides:

> "Hereafter the board of county commissioners, or any authority, shall have no power whatever to make any allowance for voluntary services, or for things voluntarily furnished, and no power to pay, or cause the same to be paid for, out of the county treasury . . ."

In support of its contention that appellee should be barred from recovering on account of the statute quoted, appellant says that the services rendered were voluntary, and cites section 115, chapter 5, of the Restatement of the Law of Restitution. Said chapter 5 is devoted to the subject of "Benefits Voluntarily Conferred," and section 115 to "Performance of Another's Duty to the Public." The rule is stated in said section as follows:

> "A person *who has performed the duty of another* by supplying things or services, although acting without the other's knowledge or consent, is entitled to restitution from the other if
> "(a) he acted unofficiously and with intent to charge therefor, and

"(b) the things or services supplied were immediately necessary to satisfy the requirements of public decency, health, or safety." (Our italics.)

The Restatements promulgated by The American Law Institute are entitled to great weight and we accept the rule quoted above as an authoritative exposition of the law on the subject considered, but it is not applicable to the case at bar. We are not presently concerned with benefits voluntarily conferred. The Reform Act expressly prohibits compensation for services so rendered to a county, and our former opinion does not infringe upon that statute. The rule of law which we deem applicable, and which we undertook to clearly state in the original opinion, is recognized and expressed in the Restatement series as follows:

"Quasi-contracts, unlike true contracts, *are not based on the apparent intention of the parties* to undertake the performances in question, nor are they promises. *They are obligations created by law* for reasons of justice. Such obligations were ordinarily enforced at common law in the same form of action (assumpsit) that was appropriate to true contracts . . ." (Our italics.) Restatement of the Law of Contracts, ch. 1, §5.

Appellee is not held to be entitled to recover upon the theory of services voluntarily rendered, but rather upon an obligation created by statute (ch. 96, Acts 1927, §§49-701 to 49-709 Burns 1933.)

Rehearing denied.

Tremain, C. J., not participating.