No. 35,619

ADRIAN M. SMITH, doing business as THE MCPHERSON LAUNDRY, and MRS. J. L. SCHWARTZ, *Appellees*, v. JEFF A. ROBERTSON, as Commissioner of Labor of the State of Kansas, *Appellant.*

(128 P. 2d 260)

Opinion filed August 1, 1942.

*Clark H. McPherson,* of Topeka, argued the cause, and *Joseph S. Payne,* of Topeka, was on the briefs for the appellant.

*James A. Cassler, L. H. Ruppenthal* and *P. A. Lackie,* all of McPherson, were on the briefs for the appellees.

The opinion of the court was delivered by

WEDELL, J.: This appeal involves the proper merit rating of an employer under our unemployment compensation law.

The employer, operator of a laundry, and his predecessor owner and operator, filed a petition in the district court to obtain a judicial review of the merit rating fixed for the present operator by the state labor commissioner. The purpose of such judicial review was to obtain the same merit rating which had been accorded to the predecessor owner and operator. Petitioners prevailed, and the commissioner has appealed.

Before we can consider the judgment of the district court on its merits we are confronted with a preliminary question touching the jurisdiction of the district court to entertain the petition for judicial review. The commissioner first appeared specially in the district court and moved to have the petition for judicial review dismissed upon the ground it was not filed in time and that the district court was therefore without jurisdiction to entertain it. The motion was denied and the commissioner appeals also from that ruling.

The final decision of the commissioner was *mailed* to appellees on November 6, 1941, and the petition for judicial review was filed in the district court on November 12, 1941. Appellant contends the law allows only five days within which to file a petition for judicial review when the employer is notified by *mail* of the rate of compensation finally fixed by the commissioner. The pertinent part of chapter 264, § 7, (C) (7), Laws 1941, provides:

"The employer shall be promptly notified of the commissioner's denial of his application, or of the commissioner's redetermination, both of which shall become final unless *within five days after the mailing of notice thereof* to his last known address or in the absence of mailing, within *fifteen days after the delivery of such notice,* a petition for judicial review is filed in the district court of the county in which such employer resides, or has his principal place of business." (G. S. 1941 Supp. 44-710 [C] [7].) (Emphasis supplied.)

Two points are involved with respect to the jurisdiction of the district court. One point is whether the five-day provision in the above section of the law can be impeached and the words "fifteen days" substituted therefor. The other point is whether the petition for judicial review was filed in time in the event it be determined the five-day provision cannot be disturbed.

The instant law originated in the senate and was Senate bill No. 366. Appellee first contends the original bill provided a fifteen-day

notice in the event of mailing, as well as in the event of delivery of the notice, and that the five-day provision with respect to mailing was a typographical error which occurred in the process of engrossing the bill in the senate. Appellee also contends the petition for judicial review was filed in time under the five-day provision. Appellant denies the soundness of both contentions but does not argue extensively the jurisdictional question. It would appear that, by reason of other pending cases, appellant is probably more concerned with a decision on the merits of the case than with the jurisdictional question. Appellant has, however, squarely raised the jurisdictional issue and obviously we cannot ignore it. Moreover, the jurisdictional issue is of such wide general significance as to transcend in importance the merits of any one particular case.

We shall first consider the highly important subject of impeaching a statute. The abstract before us does not disclose what evidence was introduced on the hearing of the motion to dismiss the petition for judicial review. In the brief of appellee it is argued the legislative history of the bill shows the original senate bill contained the word "fifteen" with respect to the mailing provision, the same as it did with respect to the delivery provision and that, as previously stated, the typographical error occurred in connection with the engrossing of the bill in the senate, and that the same error appeared in the bill as printed for the house. Appellee claims the journals of the legislature fail to show the particular section of the bill here involved was ever amended. If appellee's contention as to the legislative history of the bill is correct it follows that both the engrossed bill and the enrolled bill, containing the five-day provision with respect to mailing, is the bill that was voted upon and finally passed by both houses of the legislature and is the bill which was approved and signed by the governor. Do the facts with respect to the legislative history of the act, as asserted by appellee, constitute grounds for impeaching the enrolled bill? In the early case of *In re Taylor*, 60 Kan. 87, 55 Pac. 340, it was said:

"While the journals of the two houses may be examined for the purpose of ascertaining whether the legislative branch has expressed its will in accordance with constitutional requirements, yet a legislative measure which has taken upon itself all the forms and appearances of verity which are involved in its enrollment in the office of the secretary of state, its certification by the president of the senate and speaker of the house and its approval by the governor, may not be impeached by the legislative journals except when the proof furnished by them is of the clearest, strongest and most undoubted character.

This has been twice heretofore declared in the language now employed. (*The State, ex rel., v. Francis, Treas.,* 26 Kan. 724; *Homrighausen v. Knoche,* 58 id. 646, 50 Pac. 879.)

"In the case first cited it is said: 'If there is any room to doubt what the journals of the legislature show; if they are merely silent or ambiguous; or if it is possible to explain them upon the hypothesis that the enrolled statute is correct and valid, then it is the duty of the courts to hold that the enrolled statute is valid.'" (l. c. 92.)

In the later case of *Belleville v. Wells,* 74 Kan. 823, 88 Pac. 47, this court reviewed the earlier decision and stated:

"This court has laid down the rule that before an enrolled bill can be impeached successfully by the journals of the legislature the latter must show affirmatively, clearly, conclusively and beyond all doubt that the bill as enrolled was not the bill passed. (*The State, ex rel., v. Francis, Treas.,* 26 Kan. 724; *Weyand v. Stover, Treas.,* 35 Kan. 545, 11 Pac. 355; *In re Vanderberg, Petitioner, &c.,* 28 Kan. 243; *The State v. Andrews,* 64 Kan. 474, 68 Pac. 668.) Also, that the records of the legislative journals import absolute verity, and are conclusive as to the facts therein affirmatively shown. (*Division of Howard Co.,* 15 Kan. 194; *County-seat of Linn Co.,* 15 Kan. 500.)" (l. c. 824.)

Manifestly the legislative history, as asserted by appellee, affords no ground for impeaching the five-day provision in the instant statute. On the contrary, the legislative history of the bill affirmatively discloses that provision cannot be impeached. We shall briefly notice that history. The resolution which provided and established the rules of the 1941 senate discloses that bills are to be engrossed before the third reading (Rule 31) and that upon third reading the bill shall be read through by the secretary (Rule 37). (For statutory provisions pertaining to engrossing of bills see G. S. 1935, 45-110, 45-111.) The senate journal discloses the report of the chairman of the engrossing committee, which was made before the third reading of the bill. (Senate Journal, p. 386.) His report was:

"MR. PRESIDENT: Your Committee on Engrossed Bills, to whom was referred Senate bill No. 366, have compared the engrossed copy with the original bill, and instruct me to report the bill back to the Senate correctly engrossed.
"March 21, 1941.                    M. V. B. VAN DE MARK, *Chairman.*"

Thereafter, and on the same day, the bill was called for third reading and was passed in the senate (Senate Journal, p. 388). In the house the bill was referred to the committee on state affairs and that committee, through its chairman, Blake A. Williamson, reported the committee had considered the bill and that it recommended its passage (House Journal, p. 528). In the house there were some amendments to parts of the bill. Later the bill was

placed on third reading and was passed by the house with the five-day mailing provision now contained in the law. After both houses had passed the bill it was duly enrolled. (For statutory provisions pertaining to enrollment of bills by printing in the office of the state printer, see G. S. 1935, 45-113.) Thereafter the bill, with the five-day mailing provision, was approved and signed by the governor. It follows the five-day mailing provision now contained in the bill was passed by both houses of the legislature and was duly approved and signed by the governor.

Appellee nevertheless urges we should make the substitution of the words "fifteen days" for the words "five days" with respect to the mailing provision. In support of that contention he cites *Coney v. City of Topeka*, 96 Kan. 46, 149 Pac. 689, where it was held:

"Application of the familiar rule of statutory construction that where the legislature erroneously uses one word or figure for another and the *context* affords the means of determining *conclusively* the legislative intent, the proper word or figure will be deemed substituted therefor." (Syl. ¶ 1.) (Emphasis supplied.)

The principle stated in the Coney case constitutes sound doctrine and we would do nothing to weaken its effect. Reference was there made in one portion of the act to section 3 of the same act, which latter section had no relation whatsoever to the subject at hand. It was perfectly obvious from the context of the act that reference should have been made to section 5, which was the only section in the act to which the reference could apply. The legislative intent was thus conclusively apparent from the context of the act itself and it was wholly unnecessary to examine the legislative history of the act in order to ascertain the legislative intent. That is not the situation in the instant case. Here the legislature provided two methods whereby an employer might be notified of the commissioner's final decision with respect to merit rating. The length of time within which a petition for judicial review was required to be filed was not the same under the two methods prescribed. The wisdom or lack of wisdom involved in the distinction is solely a matter of legislative concern (*Hunt v. Eddy*, 150 Kan. 1, 4, 90 P. 2d 747).

Was the petition for judicial review filed in time? It is conceded the commissioner mailed the notice of his final decision on November 6, 1941, and that the petition for review was not filed until November 12, 1941. The last of the five days after November 6 was November 11, and the petition was not filed until the sixth day. Ap-

pellee undertakes to excuse his delay on the ground the fifth day, namely November 11, was Armistice Day, a legal holiday (G. S. 1935, 35-106). The unemployment compensation law is complete within itself and provides its own procedure. (*Shumaker v. Kansas State Labor Dept.*, 154 Kan. 418, 118 P. 2d 550; *Craig v. Kansas State Labor Commissioner*, 154 Kan. 690, 121 P. 2d 203.) The act in question makes no exception as to the time within which a petition for judicial review must be filed when the last day falls on a holiday. In that respect it is unlike the civil code. The latter code, which prescribes a method for computing the time within which an act is to be done, expressly provides that if the last day be Sunday, it shall be excluded in the computation (G. S. 1935, 60-3819). In the instant case the last day did not fall on Sunday and we are not required to decide whether the general rule of computation would be applicable if the fifth day had fallen on Sunday. Failure of the unemployment compensation law to provide for the exclusion of Sunday or other holidays in the computation of time where the last day falls on a holiday may have been an oversight on the part of the lawmakers and, if so, the law easily can be amended. That, however, is a legislative and not a judicial function. It follows it was the duty of appellee to see that his petition was filed within the time prescribed by the unemployment compensation law.

The opinion might well end here. It, however, may be well to clarify a misconception concerning appellee's right to file the petition for review on Armistice Day. It is true Armistice Day is a legal holiday, G. S. 1935, 35-106, but that statute in nowise prohibits any court or officer from acting on that day. In *Canaday v. Scott County*, 104 Kan. 785, 181 Pac. 121, it was said:

"The plaintiffs contend that the action of the board of county commissioners was void for the reason that the board first acted on the petition on a legal holiday, labor day. This contention is based on the assumption that courts and officers cannot legally act on that day. The assumption is unwarranted. The designation by statute of a day as a legal holiday does not invalidate official or judicial acts performed on that day, unless the statute expressly or by clear implication prohibits the performance of those acts. (Note, 19 L. R. A. 320; Note, 10 L. R. A., n.s., 791; Note, Ann. Cas. 1916 E, 847; 21 Cyc. 440, 445; *Selders v. Boyle*, 5 Kan. App. 451.) The statute making the first Monday in September a legal holiday neither expressly nor impliedly prohibits any court or officer from acting on that day." (l. c. 787.)

In *Tully v. Grand Island Telephone Co.*, 87 Neb. 822, 128 N. W. 508, it was held:

"The clerk of a district court has authority to receive and file a motion for a new trial on May 30.

"The court will not presume that the clerk's office was closed during May 30, nor assume that, because the last day within which a motion for a new trial might be filed fell upon Memorial day, the defeated litigant was unavoidably prevented from filing its motion within the time prescribed by law." (Syl. ¶¶ 1, 2.)

In 29 C. J. the rule is stated as follows:

"As in the case of other transactions the validity vel non of official acts performed on a legal holiday depends on the terms of the statute. The mere designation of a day as a holiday does not invalidate a sheriff's sale, or a sale for taxes, or an order adjourning the sale made on such day. Indeed statutes having for their object the suspension of official transactions on holidays will be construed as prohibiting only such acts as are in express terms or by clear implication prescribed." (1. c. 767.)

See, also, 29 C. J. 762, 763, §§ 3, 5.

From the foregoing authorities it is well established there is nothing in the law which precluded the filing of the petition on Tuesday, November 11, and there is nothing in the record which discloses an unsuccessful attempt by appellee to file the petition on that day.

It should also be borne in mind that this court, like other courts, has definitely distinguished between statutes which provide that an act is to be done *within* a specified number of days and statutes which provide that *at least* a certain number of days should intervene between dates or acts. In the last class of cases the words *"at least"* have been interpreted to mean clear days. Clear days are not intended where the word *"within"* is used. (See *Boring v. Boring,* 155 Kan. 99, 122 P. 2d 743, in which the various classes of cases, both old and recent, were analyzed.)

Furthermore, as previously stated, we have here a law which is complete within itself and provides its own precedure. It employs the word *"within"* and makes no provision for excluding in the computation of time any holiday whether intervening between secular days or whether the last of the five days falls on a holiday. A general rule for computation of time is not based upon any theory of right, but is merely designed to promote definiteness and clarity with respect to computation. That the general rule for computation of time already has become complicated was again clearly demonstrated in the Boring case, *supra.* For courts to read further exceptions into the general rule would complicate the rule even more. We think it safer and a far better practice to permit the legislature to

amend the provisions of a particular act such as the unemployment compensation law in the manner the legislature desires.

The order overruling the motion to dismiss the petition on the ground the district court was without jurisdiction to entertain it is reversed. Manifestly, since the district court lacked jurisdiction to pass on the merits of the question presented, that subject is not here for appellate review.

The action is remanded with directions to dismiss the petition.

DAWSON, C. J. (dissenting in part): I concur in the rules stated in paragraphs 1, 2, 3 and 6 of the syllabus and corresponding portions of the opinion, but dissent from so much of the syllabus and opinion as deals with the court's computation of the time the appellees had in which to appeal. I cannot approve the sort of logic which reasons that because a court, a public officer, or an official board *may* lawfully act on a nonjudicial day, a private litigant *must* act on such a day or lose his legal right.

Hitherto, for the last forty years or more, the Kansas rule for the computation of time within which an act may be done or a right claimed has been that if the time specified is less than a week the precise number of clear judicial days is intended, and Sundays and statutory holidays are excluded from the computation; but where the time allowed is more than a week, Sundays and statutory holidays are included in the count, except where the last day falls on a Sunday or statutory holiday, in which instance such day is not counted, and the right is invoked within time if exercised on the next succeeding business day. The rule announced in this case is novel and unjust and I decline to participate in its promulgation.