No. 36,957

THE CITY OF WICHITA, *Plaintiff*, v. GEORGE ROBB, as State Auditor, etc., *Defendant*.

(179 P. 2d 937)

Opinion filed May 5, 1947.

*Fred W. Aley*, city attorney, and *John S. Dean, Jr.*, of Topeka, argued the cause and were on the briefs for the plaintiff.

*William Paul Timmerman*, assistant attorney general, argued the cause, and *Edward F. Arn*, attorney general, was with him on the briefs for the defendant.

The opinion of the court was delivered by

HARVEY, C. J.: This is an original proceeding in mandamus to require defendant to register $154,458.85 of general improvement bonds (water supply) of the city of Wichita, being a part of an issue of bonds of the city in the aggregate principal amount of $1,240,800 for that purpose, alleged to have been authorized at a special city election held at the time of the general election on November 5, 1946. Defendant refused to register the bonds upon the ground that the notice of the election was not given for the

time required by G. S. 1935, 10-120, the pertinent portions of which read:

"Notice of such election shall be published in a newspaper of general circulation in the municipality once each week for three consecutive weeks, *the first publication to be not less than twenty-one days prior to such election.*" (Emphasis supplied.)

The facts are not controverted and may be stated briefly as follows: The abnormal growth of the population of the city and the difficulty of obtaining material and labor for needed city improvements during the war years became so great that in 1946 plans were made for the issuing of bonds for a number of public improvements, with the result that the city officials prepared and caused to be published in the official city paper on October 3 a series of resolutions which had been adopted by the city commissioners declaring the necessity of the respective improvements, outlining the general character of each of them, directing the city engineer to prepare preliminary reports and estimates of the cost, and the city attorney to prepare proper ordinances, and for the issuance of a proclamation and notice of a special election to be held on November 5, 1946, to vote upon general improvement bonds for the respective purposes.

On October 16, 1946, city ordinance No. 14-492, previously enacted, was published in the official city paper. Section 1 authorized and directed the mayor and board of city commissioners to call a special city election for the purpose of submitting to the qualified electors of the city each of eight propositions for the issuance of general improvement bonds, in the amounts stated as to each, for the following purposes: (1) For the improvement of the water supply; (2) improvement of the sewer system; (3) constructing suitable buildings for police purposes; (4) erection of a building for a public library; (5) erecting a building for a public auditorium; (6) erecting buildings for the fire department; (7) for adding to the building known as the Forum; (8) erecting a building as a garage for city owned vehicles. Section 2 reads:

"That said election shall be held on the 5th day of November, 1946, as is provided by law.

"Sec. 3. That the ballots to be used in said election shall be in substantially the following form:"

Here was set out in full the official ballot for the election. This set out each of the propositions separately, stated the amount of bonds proposed to be issued for each purpose, and gave proper in-

formation for those who desired to vote for or against each particular proposition.

Section 4 provided for notice of said election, to be given in the manner as provided by law. Such notice set forth the time and place of holding the election.

Section 5. "The proclamation and notice of said special bond election shall read as follows:" · And here followed in full the proclamation and notice for the city bond election.

On October 17, 24 and 31, 1946, there was published in the official city paper the proclamation and notice of the city bond election. This was complete in form and identical with those published in the city ordinance.

The election was held on November 5, 1946. On the Friday following the election the commission met and canvassed the vote and found that proposition 1, pertaining to the bonds for the water supply, had been carried by a majority of 2,661 votes, and proposition 2, pertaining to the bonds for the sewer disposal had carried by a majority of 3,622, and that each of the other propositions submitted at the election was defeated by the vote cast.

The legislature of 1947 enacted House bill No. 4, which became effective on its publication in the official state paper March 1, 1947, entitled, "An Act relating to cities, validating and legalizing certain bond elections and bonds." The pertinent portions of the statute read:

"That if any city, prior to the effective date of this act, has called an election for the purpose of submitting to the electors of such city the question of the issuance of bonds for one or more of the following purposes: (1) Paying the cost of constructing and equipping a building to repair, maintain and store motor equipment and other personal property of said city; (2) paying the cost of constructing and equipping a building to house the police and fire departments of said city and to provide quarters for war veterans' organizations and to acquire additional land for a site for such building; . . . and the notice calling such election was first published only twenty days prior to the date fixed for holding such election although the statute under which such election was called required that such first publication should be not less than twenty-one days prior to such election, such bond election is hereby validated and said election is hereby declared to be legal and regular in every respect the same as if the notice calling such election had been first published at least twenty-one days before the date fixed for holding such bond election; and said city is hereby authorized and empowered to issue the bonds of such city for any of the purposes approved . . . by the majority of the electors voting at such bond election; and such bonds are hereby validated and declared to be valid and legal obligations of such city the same as if said bond election was regular

and correct in each and every respect and in full compliance with the law relating to the publishing of notices of bond elections."

The legal questions argued here are: (1) Whether the notice of election was published twenty-one days before the date of the election, and if not (2) whether the election is validated by House bill No. 4 of the Laws of 1947.

The portion of G. S. 1935, 10-120, above quoted, requires the first publication of the notice of election to be at least twenty-one days before the date of election. The formal proclamation and notice of election was first published in this case on October 17. Counting that day as one of the days of publication there were only nineteen days before November 5. Plaintiff argues, however, that since the proclamation and notice of election was published in full in the city ordinance published on October 16 that date should be counted. We think the point is well taken, and specific authority for so holding is found in *State, ex rel., v. Comm'rs of Sherman Co.*, 39 Kan. 293, 18 Pac. 179. That was a county-seat election, which required the notice to be published thirty days before the date of election. The order calling the election for November 22 was published as a part of the commissioners' proceedings on October 20 and 27. This was followed by an official publication of the notice of election on October 28, and in each succeeding issue of the paper until November 22. Both the commissioners' proceedings and the official notice of the election were signed by the proper officers and were official publications. It was held that the publication of the notice of the election in the commissioners' proceedings, followed by the official publication, was a compliance with the statute. In this case both the ordinance published on October 16 and the formal proclamation and notice published on the 17, 21 and 28 of October were official publications, signed by the appropriate city officials. We hold, therefore, that the official publication was for twenty days when, under the statute, it should have been for twenty-one days.

Under our previous decisions we could not regard that as sufficient. The provisions for notice of the time and place of an election are mandatory rather than directory. (See *State, ex rel., v. Echols*, 41 Kan. 1, 20 Pac. 523, and *State, ex rel., v. Staley*, 90 Kan. 624, 135 Pac. 602.) Many of our other cases might be cited and commented upon, but we shall not labor this point because of the one next to be considered.

Counsel for plaintiff argue that inasmuch as the notices of election were first published twenty days prior to the date of the election that the election was validated by House bill No. 4, above mentioned. We think the point is well taken. It is true that all the propositions submitted in this case were not referred to in House bill No. 4, but three of them, Nos. 3, 6, and 8 were. Hence, House bill No. 4 validated the election upon those propositions. The city ordinance in this case did not call for eight elections; it called for one election upon eight propositions, which was proper. (29 C. J. S. 99.) It would be unreasonable to say that the election was valid on propositions tantamount to those mentioned in House bill No. 4, but was not valid upon the other propositions. It is the *election* which House bill No. 4 validated. It seems clear to us that in this case the election held on each of the eight propositions submitted to the voters at the special election of November 5, 1946, was a valid election. Since that is true, plaintiff's officials are authorized to issue the bonds upon the propositions which carried at that election. This includes the internal improvement bonds sought to be registered now.

Judgment is rendered for plaintiff. No formal writ will be issued if the bonds are registered promptly.

HOCH, J., not participating.