OWEN BAUGH, MITCH BAUGH, JOE BLASCO, HOMER ADAMS, LEO FISHER, VERNON E. HOLMES, JOHN LAUDAN, TOM McDONALD, ROBERT MITTS, GEORGE MOORE, ED PRITCHETT, JOHN REES, WILLIAM REES, H. R. RICHARDS, GARLAND SCROGGIN, R. F. SEARL, HARRY SISSON, ROBERT A. SMITH, EDDIE SPRINGER, ROSCOE STATON, LEM SYLVESTER, GEORGE THOMAS, and WALTER UMPHENOUR, *Appellees*, v. RURAL HIGH SCHOOL DISTRICT No. 5, LINN COUNTY, KANSAS, and OTTO HENDERSON, Director, DWIGHT SMITH, Clerk, MAX L. MILLER, Treasurer, ROBERT STEVANUS and ROBERT V. HALL, as members of the School Board of Rural High School District No. 5, Linn County, Kansas, *Appellants*.

## No. 41,469

OWEN BAUGH, MITCH BAUGH, JOE BLASCO, LEO FISHER, JOHN LAUDAN, TOM McDONALD, ROBERT MITTS, GEORGE MOORE, ED PRITCHETT, JOHN REES, WILLIAM REES, H. R. RICHARDS, R. F. SEARL, HARRY SISSON, GARLAND SCROGGIN, ROBERT A. SMITH, EDDIE SPRINGER, ROSCOE STATON, LEM SYLVESTER, GEORGE THOMAS, and WALTER UMPHENOUR, *Appellees*, v. COMMON SCHOOL DISTRICT No. 78, LINN COUNTY, KANSAS, and JAMES A. STILLWAUGH, Director, REES H. HAMILTON, Clerk, E. K. SELLERS, Treasurer, RUSSELL E. JOHNSON and VERNON E. HOLMES, as members of the School Board of Common School District No. 78, Linn County, Kansas, *Appellants*.

(340 P. 2d 891)

Opinion filed June 13, 1959.

*Glenn Jones,* of Parsons, argued the cause and was on the brief for appellants.

*M. K. Hoag,* of Pleasanton, argued the cause and was on the brief for appellees.

The opinion of the court was delivered by

SCHROEDER, J.: These injunction actions were instituted by a group of taxpayers against the appellant school districts and their board members to challenge the validity of proceedings to issue school bonds, on the grounds that notice of the bond elections were published for an insufficient period of time. The trial court rendered judgment for the appellees, permanently enjoining the issuance, registration and sale of the bonds.

Appeals have been duly perfected to this court by the school districts from all adverse rulings.

The sole and controlling question presented is whether the notice given of the bond elections was sufficient to comply with the statu-

tory requirements. The foregoing question is treated in two phases: (1) What is the publication date of a newspaper regarding legal notices? and (2) Does G. S. 1957 Supp., 72-2018, require twenty-one clear days notice?

Common School District No. 78 and Rural High School District No. 5 are located in Linn County, Kansas, and cover practically the same territory. The city of Pleasanton, Kansas, is a city of the third class and is included within the boundaries of both districts.

Pursuant to G. S. 1957 Supp., 72-2017 and 2018, the respective school districts called an election upon the question whether bonds should be issued for the purpose of providing funds to acquire a site and construct and equip a school building. The election was held on May 22, 1958, and the bonds carried in both districts. After the election and before the bonds were issued and registered, the appellees filed the present actions to enjoin the issuance, registration and sale of the bonds on the grounds that the elections were void because of insufficient notice and because of certain irregularities in the conduct of the elections. The allegations of the petition in case No. 41,453 and the petition in case No. 41,469 are identical except as to the parties defendant, the amount of the proposed bond issues, and the number of yes and no votes in the respective districts. The evidence adduced at the trial applies equally to both cases. In all material respects the cases are identical concerning the issues, and the parties have stipulated that the decision of the court in one case shall control the decision in the other case.

Paragraph 8 (a) of the petitions alleges: "The said proposed election was null and void and contrary to G. S. 1957 Supp. 72-2018 in that Twenty-One (21) days did not elapse from the time of the first publication of said notice of election on May 1, 1958, until the election was held on May 22, 1958, . . ." Other subsections of paragraph 8 deal with alleged irregularities in the conduct of the election.

The defendants in their answer bring in new matter and allege that notwithstanding the May 1, 1958, date line of the paper in which said bond election notice first appeared, said newspaper was in truth and in fact printed, published and circulated on April 30, 1958, and twenty-one clear days did elapse prior to said election.

The trial court found the allegations in regard to the irregularities in conducting the election to be true, but not sufficient to vitiate

the election for the reason that there was no evidence that a sufficient number of votes was influenced thereby to change the result of the election. (This question is not before us on appeal.) The trial court further found that the first publication of notice was had on May 1, 1958, and the election was held on May 22, 1958; that twenty-one clear days did not elapse from the time of the first publication until the time of the election; that the notice did not comply with the statute and the election held on May 22, 1958, was void.

There is little if any conflict in the evidence. The notices given of the bond election to be held on May 22, 1958, were published in the Pleasanton, Kansas, *Observer-Enterprise,* which is a weekly newspaper published and circulated in the two school districts involved. This paper is qualified to publish legal publications. The notices were published for three consecutive weeks, the first publication being made in the paper which carried a date line of May 1, 1958. This edition of the paper was printed sometime between 3:30 and 5:00 o'clock p. m., Wednesday, April 30, predated May 1, 1958. After the papers were printed they were taken to the Pleasanton post office for mailing to the subscribers. With the exception of approximately twenty-five papers sold from a rack in front of the newspaper office on April 30, the entire circulation is had through the U. S. mail. Some of the Pleasanton city subscribers called at the post office Wednesday evening, April 30, and received their paper. *General circulation* was had on Thursday, May 1, and no subscriber, other than those calling at the post office Wednesday evening, could have received his paper prior to May 1.

Pleasanton city covers an area of about one square mile and each of the school districts is more than eighty square miles in area.

Total circulation of the Pleasanton *Observer-Enterprise* is about 1,200; approximately 300 in the city of Pleasanton and approximately 125 on each of the four rural routes out of Pleasanton. The balance of the circulation is made up of bundles to nearby towns and single mailings to various more distant points.

Papers for the rural route subscribers are placed on the carriers' desks for delivery the following morning, which in this case would be May 1.

Papers for subscribers with a nearby town address are tied in bundles; each bundle being properly identified with the name of the town written on the outside. There was a bundle for Mound

City, Boicourt, Prescott and LaCygne. The number of these subscribers who lived within the school districts involved is not disclosed by the evidence. These bundles are placed in a sack labeled to the particular town they are to go and are taken to the train. The bundles are not opened by the local postal employees and it would have been impossible for these subscribers to receive their paper until May 1. The bundle for Boicourt frequently did not arrive at the Boicourt post office until Friday of each week. Boicourt subscribers live within the districts involved.

The Pleasanton, Kansas, *Observer-Enterprise* has carried a Thursday date line for many years and has published legal notices for a long time. The legal publications have always carried a Thursday date line and the proof of publication has always had a date line of Thursday.

The bond election notices in question here as published were annotated: "(First published in the Pleasanton, Kansas, *Observer-Enterprise*, May 1, 1958.)" In proof of publication the publisher's affidavit states that such notices were first published on May 1, 1958.

We shall first consider whether the notice of the bond elections which appeared in the Pleasanton, Kansas, *Observer-Enterprise* was first published on April 30 or on May 1. While it is true that city subscribers in Pleasanton could have received their paper Wednesday evening, April 30, and some did by calling at the post office, the *general circulation*, taking into account the rural routes out of Pleasanton and the nearby towns, was not achieved until Thursday, May 1. It is not challenged that the newspaper bore a publication date of May 1 and that proof of service of publication disclosed that the publication was first made on May 1.

G. S. 1957 Supp., 72-2018, reads in part:

". . . Notice of the election shall be published in a newspaper of *general circulation* in the district once each week for three consecutive weeks, . . ." (Emphasis added.)

The Supreme Court of Indiana in *Bd. of Com. of Decatur Co. v. Greensburg Times*, 215 Ind. 471, 19 N. E. 2d 459, said:

". . . General circulation as applied to a newspaper depends largely upon the diversity, rather than on mere number of subscribers . . ." (p. 476.)

The purpose of a legal publication is to give notice. Here the notice was available on April 30 to a fraction of the public in an area of about one square mile but not available or circulated to the

public in the remaining portion of the district until May 1, or later. The *general circulation* of the first publication of the legal notice here in question was not until May 1.

We think the proper construction of the statute is that the printed date of the newspaper is generally to be regarded as the date of publication. There was no evidence in this case competent to show that the newspaper was published the day before its date. The trial court's finding on this point should therefore be sustained. A contrary decision would lead to confusion concerning the effective date upon which legal notices are published, since morning papers are usually printed prior to midnight on the preceding day and many weekly papers are actually printed on the day prior to the date which they bear.

The provisions in G. S. 1949, 64-102, relating to legal publications and notices, have been fully met in view of the facts and the trial court's finding that publication was first made on May 1.

We have been cited to no Kansas cases directly in point nor has our research disclosed any. In fact, very few cases on this point have been found in foreign jurisdictions. In *Davis v. Huston,* 15 Neb. 28, 16 N. W. 820, it was said in the syllabus concerning a publication that "The paper will be presumed to have been published on the day of which it bears date."

The New Hampshire court had a case squarely in point upon the question here presented in *Schoff v. Gould,* 52 N. H. 512. That case involved the validity of a collector's tax sale of real estate where the first publication was in the issue of the newspaper dated September 21, 1841. The defendant offered evidence to show that the publication of that paper was in fact September 20. In the opinion, which we regard as soundly reasoned, the court said:

". . . His evidence tends to prove that this paper was actually printed and ready to be delivered on the afternoon of September 20, and was actually delivered to the subscribers in the village of Lancaster, where the paper was published, that afternoon or evening, and the rest were left in the post-office that night, directed to the other subscribers, and went out in the mail the next morning; that the whole edition was about four or five hundred,—from fifty to seventy-five for the village subscribers.

"We think the true construction of the statute is, that the printed date of the newspaper is generally to be regarded as the date of publication, and that there was no evidence in this case competent to show that the paper was published the day before its date. However it might be in case of fraud or mistake in the printed date, or under other peculiar circumstances, we have no doubt but that the date of the paper was intended by the legislature to be the

date of publication in ordinary cases of notice in a weekly paper published on a fixed and uniform day of the week, purporting and generally understood to be published on the day of its date, and actually issued so near that day as to justify the understanding that, for the practical purpose of giving legal notice, that is the day of publication. Obvious reasons of convenience and certainty, and the general understanding and practice prevailing in this State, which the makers of the statute cannot be presumed to have overlooked, show that such must have been the legislative design.

"The publication of notice was insufficient, and the sale void." (p. 513.)

Does G. S. 1957 Supp., 72-2018, require twenty-one clear days notice? Pertinent parts of the foregoing statute read:

". . . Notice of the election shall be *published* in a newspaper of general circulation in the district once each week for three consecutive weeks, the first publication to be *not less than twenty-one days prior to such election,* except that in common-school districts not including a city of the third class, *in lieu of such publication,* notice may be given by *posting* written or printed notices in three public places in the district *at least twenty-one days prior to such election* . . ." (Emphasis added.)

The foregoing statute amends G. S. 1949, 72-2002. The appellees contend ·72-2018, *supra,* requires twenty-one clear days notice and that the publications here did not meet that requirement because twenty-one clear days did not elapse between the date of the first publication (May 1) and the date of the election (May 22). The answer lies in the method of computing time where the words "at least" or "not less than" are used in the statute, as is the case here.

It may be noted that the bond law, G. S. 1949, 10-120, upon which appellants rely, reads in part as follows:

"Whenever an election is required for the issuance of bonds for any purpose by any municipality *other than a school district,* drainage district or irrigation district, . . ." (Emphasis added.)

It is apparent the foregoing statute cannot apply to school districts. Appellants also rely upon the *City of Wichita v. Robb,* 163 Kan. 121, 179 P. 2d 937. That case involved the general bond statute, G. S. 1935, 10-120, which required notice of the bond election to be published "not less than twenty-one days prior to such election." Counting the first day of publication in that case as one of the days of publication there were only nineteen days before the election. The controlling question in the decision, however, was whether or not an act of the legislature validated the bond election for which the notice of election was published for an insufficient period of time.

The statutes, G. S. 1949, 60-3819 and 60-3819a, provide a method of computing time where the statute prescribes a time *within which* an act is to be done. These statutes have been held to have no application where a minimum time is required and the words "at least" or "not less than" are employed.

In *Smith v. Robertson,* 155 Kan. 706, 128 P. 2d 260, the court was interpreting a statute which makes a decision of the commissioner final, where notice thereof is given by mail, unless *within* five days after mailing of the notice thereof, a petition for judicial review is filed in the district court. It was held that a petition filed on the sixth day did not conform to the statute and was too late. In the opinion the court said:

"It should also be borne in mind that this court, like other courts, has definitely distinguished between statutes which provide that an act is to be done *within* a specified number of days and statutes which provide that *at least* a certain number of days should intervene between dates or acts. In the last class of cases the words *"at least"* have been interpreted to mean clear days. Clear days are not intended where the word *"within"* is used . . ." (p. 712.)

Cases construing the words "at least" or "not less than" in a statute have been decided over a wide expanse of time in the legal history of our state. One of the early cases is *Garvin v. Jennerson,* 20 Kan. 371, in which the second syllabus reads:

"A deposition to be read on the trial of a case in the district court must be filed *at least* one day before the day of trial; and the statute means thereby, that one *clear* day must intervene between the filing of the deposition and the commencement of the trial at which it is to be read. To properly compute the time within said statute, both the day on which the deposition is filed, and the day of the trial, are to be excluded."

Another case which held that the statutory method of computing time was not applicable where the words "at least" were used in the statute under consideration is *Boring v. Boring,* 155 Kan. 99, 122 P. 2d 743. It was there held in construing G. S. 1935, 60-1517, that it was the legislative intent that sixty clear days should intervene between the date of the filing and the hearing of a suit for divorce. It was further held the statutory rule of computation prescribed in G. S. 1935, 60-3819 (now G. S. 1949, 60-3819), which directs the exclusion of the first day and the inclusion of the last, in computing the time *within* which an act is to be done, does not apply to a suit for divorce, and a default decree for divorce and alimony rendered on the sixtieth day after the filing of the

petition, without the declaration of an emergency, was prematurely rendered and should have been set aside on the motion of the defendant, filed on the same day.

In the case of *Gunter v. Eiznhamer*, 165 Kan. 510, 196 P. 2d 177, a statute (G. S. 1935, 61-1304) provided that notice shall be served *at least three days before* commencing a forcible detainer action, it was held an action commenced on the third day after notice was served was insufficient in that *three clear days* must elapse. It was also held, since it was purely a statutory action, the person availing himself of it must bring himself clearly within the provisions of the law.

The most recent case on the question presently before the court is *State, ex rel., v. Schmidt*, 182 Kan. 593, 322 P. 2d 772. That case involved the *organization of a rural high school district* under G. S. 1955 Supp., 72-3541, and turned on the method of computing time in the publication of a legal notice of a special election. The first publication was had on November 26, 1956, and the election was held on December 17, 1956. It was there said in the opinion:

"The source of the prior law to G. S. 1955 Supp., 72-3541 is G. S. 1949, 72-3502.

"Section 72-3502, G. S. 1949 provided:

" '. . . Notice of all such elections shall be given *at least twenty-one days* prior to the date of such election by posting printed or typewritten notices on the door of each schoolhouse in the proposed district and by publishing the same twice in some newspaper published in each county in which the proposed district or any part of the proposed district lies, . . .' (Emphasis ours.)

"Section 72-3541, G. S. 1955 Supp. now provides:

" '. . . Notice of such election shall be given *at least twenty-one days* prior to the date thereof by posting notices on the front door of each schoolhouse in the proposed district and by publishing notice twice in a newspaper published in each county in which any part of the proposed district lies, *the first publication to be not less than twenty-one days* prior to the election . . .' (Emphasis ours.)

"The only change made in the statute was the addition of the words 'the first publication to be not less than twenty-one days prior to the election.'

"[1] Prior to this amendement [amendment] the rule was well established in the decided cases that in computing the time of 'at least twenty-one days' the first day of publication was included and the last day was excluded. This rule of computing time did not require 'twenty-one clear days' of publication. (*State, ex rel., v. Wallace*, 112 Kan. 264, 210 Pac. 348; *City of Wichita v. Robb*, 163 Kan. 121, 179 P. 2d 937; *State, ex rel., v. Miami County Comm'rs*, supra.) . . "The Miami case was decided in 1950. The amendment of the law by

the legislature was in 1951. *The additional requirement in the statute that the first publication must be 'not less than twenty-one days' can only be construed to mean a legislative intent of twenty-one 'clear days,' thus abrogating the previous rule established by judicial interpretation of G. S. 1949, 72-3502.*

"The case at bar is one of first impression under the amended statute (G. S. 1955 Supp., 72-3541.) Under its provisions notice of election must be given 'at least and not less than twenty-one clear days' prior to the election.

"The notice here did not comply with the statute and the election held on December 17, 1956, was void." (p. 595.) (Emphasis added.)

Upon reviewing the cases cited in the paragraph (numbered [1]) above quoted, the case of *State, ex rel., v. Miami County Comm'rs,* 168 Kan. 723, 215 P. 2d 631, is the only firm decision which squarely supports the rule for which it is cited. In the *Schmidt* case it was held the legislature intended to change the judicial interpretation of 72-3502, *supra,* in the *Miami* case concerning the method of computing time where the term "at least twenty-one days" was used in the statute. In other words, the legislature by amendment of the statute overruled the *Miami* case and said in effect "at least twenty-one days prior to the date of such election" means *clear days* and G. S. 1949, 60-3819, is not intended to apply.

In the case of *State, ex rel., v. Wallace,* 112 Kan. 264, 210 Pac. 348, the statute there under consideration required *at least twenty-one days* and the facts disclose that twenty-one clear days elapsed between the first date of publication and the election. The question there presented was whether the statute required twenty-one days after the last publication in the newspaper.

The case of *City of Wichita v. Robb,* supra, has already been commented upon.

The instant case is controlled by the decision in *State, ex rel., v. Schmidt,* supra. The phrase "the first publication to be not less than twenty-one days prior to the election," as used in G. S. 1955 Supp., 72-3541, pertains to the same subject matter as G. S. 1957 Supp., 72-2018—*the publication of notice of a special election in a newspaper.* It is further to be noted that the above two statutory sections were enacted by the legislature in 1951, in the same bill, being Senate Bill No. 5, and entitled "AN ACT to clarify and codify certain laws governing schools, relating to common-school, rural high-school and community high-school districts, . . ." (Laws of 1951, ch. 395, §§ 45 and 61.)

Both sections of the statute used the term "not less than twenty-one days" as regards the publication of notice and the term "at

least twenty-one days" as regards posted notice, the only distinction being that 72-3541, *supra,* required both posted notice and publication notice while the statute here in question, there being a third class city within the district, did not require the posted notice but did require the publication notice be "not less than twenty-one days prior to such election."

It could not be successfully argued that the legislature intended different meanings to attach to the terms "at least" and "not less than" when it used each of these expressions in both sections of the statute presently the subject of discussion.

The appellants argue that the *Schmidt* case is applicable only where a statute provides that the publication notice should be "at least and not less than twenty-one days prior to the election." We do not so construe the holding in the *Schmidt* case as it applies to the construction of 72-3541, *supra.* The legislature was not satisfied with the interpretation placed upon the statute in the *Miami* case and changed the wording of the statute thereby indicating its intention that the terms "at least" and "not less than" should be construed as twenty-one clear days.

We therefore hold the provisions of G. S. 1957 Supp., 72-2018, which require notice of a bond election in a school district to be by publication in a newspaper, the first publication to be *not less than twenty-one days prior to such election,* mean twenty-one clear days must intervene between the date of first publication in the newspaper and the date of the bond election. In computing the time both the first day of publication and the day of the election are to be excluded. The statutory rule of computation prescribed in G. S. 1949, 60-3819 and 3819a, which directs the exclusion of the first day and the inclusion of the last in computing the time *within* which an act is to be done, does not apply.

This court has always held that the statutory provisions for notice of a special election are mandatory rather than directory. Failure to comply with such mandatory provisions renders the election void. (*State, ex rel., v. Echols,* 41 Kan. 1, 20 Pac. 523; *State, ex rel., v. Staley,* 90 Kan. 624, 135 Pac. 602; and *State, ex rel., v. Schmidt,* supra.)

The notices here did not comply with the statute and the bond elections held on May 22, 1958, are void.

The judgment of the trial court in each of the consolidated cases is affirmed.

FATZER, J., dissenting: In my opinion this case is not correctly decided. The principal question presented is whether the notice of election first published on May 1, 1958, was published twenty-one days prior to the election which was held on May 22, 1958. The court holds it was not, but in my opinion that conclusion disregards the clear and unambiguous terms of G. S. 1957 Supp., 72-2018. What was said in my dissenting opinion in *State, ex rel., v. Schmidt,* 182 Kan. 593, 596, 322 P. 2d 772 sets forth my views on this question. To reiterate them is unnecessary and that opinion is incorporated herein as grounds for my dissent.

In addition, however, I wish to state that in the instant case it is the *"first publication"* which shall be not less than twenty-one days prior to the election—not "twenty-one clear days" as stated in the majority opinion—and the day of *"first publication"* is one of those twenty-one days. Therefore, counting May 21, 1958, as the last day prior to the day of election (May 22, 1958) and counting back each day to May 1, 1958 (date of first publication), twenty-one days notice of the election was given.

Cases dealing with an appeal from an order of the State Labor Commissioner, the reading of a deposition at a trial in the district court, the time for hearing a suit for divorce, and the commencing of a forcible detainer action are cited in the court's opinion as bearing upon this question. I have no quarrel with the soundness or correctness of those decisions, but simply state they are not applicable in ascertaining the legislative intent of G. S. 1957 Supp., 72-2018, as to the manner of calculating the time a notice of an election is required to be published in a newspaper of general circulation in the school district once each week for three consecutive weeks, "the first publication to be not less than twenty-one days prior to such election." The statute provides its own measure of calculation, that is, the *"first publication"* shall be "not less than twenty-one days prior to such election." The notice calling the election was legally published and I would reverse the judgment of the district court.